2000 OK 45

**Chaudhury Dhana Koteswara DAVULURI, M.D., Plaintiff–Appellee,**

v.

**STATE of Oklahoma, ex rel., OKLAHOMA BOARD OF MEDICAL LICENSURE AND SUPERVISION, Defendant–Appellant.**

No. 91,750.

Supreme Court of Oklahoma.

June 13, 2000.

Daniel J. Gamino, Oklahoma City, Oklahoma, for Defendant–Appellant.

Kent F. Frates, Linda G. Scoggins, Oklahoma City, Melissa Beeson Heindselman, Hartzog Conger & Cason, Oklahoma City, for Plaintiff–Appellee.

WATT, Justice:

### FACTS AND PROCEDURAL BACKGROUND

¶ 1 Plaintiff, Chaudhury Dhana Koteswara Davuluri, M.D., complains of an opinion of the Court of Civil Appeals, Division 3, holding that the trial court lacked jurisdiction to hear an appeal from an order of the Oklahoma Board of Medical Licensure and Supervision, which had denied Dr. Davuluri's application for a license to practice medicine. The Court of Civil Appeals held that an appeal from an order of the Board denying an application for a license to practice medicine may not be taken to the district court but "lies directly to the Supreme Court under 59 O.S. 513."[1]

¶ 2 Dr. Davuluri graduated from Spartan Health Sciences University, School of Medicine, located in Vieux Fort, St. Lucia, West Indies, in 1985. In 1986 he was certified by the Educational Commission for Foreign Medical Graduates. ECFMG certification is a prerequisite for a graduate on a non-U.S. medical school to enter any residency or fellowship program accredited by the American Colleges of Medical Education. Dr. Davuluri was accepted to the medical graduate training program at the State University of New York at Syracuse, which, like the University of Oklahoma College of Medicine, is accredited by the American Colleges of Graduate Medical Education.

---

1. Title 59 O.S. Supp.1998 513 provides, in material part:

The Board is hereby given quasi-judicial powers while sitting as a Board for the purpose of revoking, suspending or imposing other disciplinary actions upon the license of physicians or surgeons of this state, and appeals from its decisions shall be taken to the Supreme Court of this state. . . .

¶ 3 Dr. Davuluri completed his one year internship at SUNY, Syracuse in 1988 and began a three year residency there in obstetrics and gynecology. During the final year of his residency at SUNY, Syracuse, Dr. Davuluri was chief resident of the OB/GYN residency program. Dr. Davuluri graduated from SUNY, Syracuse's OB/GYN program in 1991 and had passed Parts I and II of the Federal Licensing Examination. All physicians must pass Parts I and II of the FLEX examination as a prerequisite to practicing medicine in the United States. Dr. Davuluri has since been licensed to practice medicine in Michigan, Nebraska, South Dakota, and West Virginia.

¶ 4 In 1991 Dr. Davuluri was employed as staff obstetrician and gynecologist at Carl Albert Indian Health Facility in Ada, Oklahoma. He was not required to have an Oklahoma license to practice medicine at that time as his unrestricted licenses from other states satisfied the Indian Health Service's requirements.

¶ 5 Dr. Davuluri applied to the Board for a license to practice medicine in Oklahoma in 1997. The Board's secretary issued Dr. Davuluri a temporary license, following which Dr. Davuluri left the Indian Health Service to establish an obstetrical and gynecological practice in Ada, and was granted privileges at Valley View Hospital in Ada.

¶ 6 It is undisputed that during the more than six years Dr. Davuluri practiced at the Indian Health Facility and was in private practice in Ada, no complaints were lodged and no medical malpractice actions were instituted against him. Dr. Davuluri presented letters of recommendation to the Board from the supervising OB/GYN at the Indian Health Facility and from its administrator that vouched for Dr. Davuluri's good character and professional skill.

¶ 7 The Board conducted a hearing on Dr. Davuluri's application for a permanent and unrestricted license to practice medicine on November 20, 1997. ·At the conclusion of the hearing the Board denied Dr. Davuluri's application and terminated his temporary license to practice medicine by a vote of five to one.

¶ 8 On December 2, 1997 Dr. Davuluri filed suit in the District Court of Pontotoc County under the authority of 75 O.S. Supp.1992 318 of the Oklahoma Administrative Procedures Act.[2] Dr. Davuluri contended that the Board's decision was, among other things, clearly erroneous and arbitrary and capricious. Dr. Davuluri also sought a temporary restraining order staying enforcement of the

2. Title 75 O.S. Supp.1992 318 provides:
   A. 1. Any party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title.
   2. This section shall not prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions.
   3. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review.
   B. 1. The judicial review prescribed by this section for final agency orders, as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.
   2. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title.
   C. Copies of the petition shall be served upon the agency and all other parties of record, and proof of such service shall be filed in the court within ten (10) days after the filing of the petition. The court, in its discretion, may permit other interested persons to intervene.
   D. In any proceedings for review brought by a party aggrieved by a final agency order:
   1. The agency whose final agency order was made subject to review may be entitled to recover against such aggrieved party any court costs, witness fees and reasonable attorney fees if the court determines that the proceeding brought by the party is frivolous or was brought to delay the effect of said final agency order.
   2. The party aggrieved by the final agency order may be entitled to recover against such agency any court costs, witness fees, and reasonable attorney fees if the court determines that the proceeding brought by the agency is frivolous.

Board's order pending a final decision on the merits of his appeal.

¶ 9 In its written order dated December 5, 1997 the Board gave as the reasons that Dr. Davuluri failed to satisfy the licensure requirements of the Oklahoma Statutes, 59 O.S. 481, et seq. the following:

"The evidence reflects that Applicant's medical school was not substantially equivalent to the education and training offered by the University of Oklahoma College of Medicine; that Applicant has multiple examination failures, failing Component 1 of the Federation Licensing Examination (FLEX) four times and failing Component 2 of the FLEX twice; and that Applicant reported only three of these licensing examination failures on the Application for licensure."

The Board's order is silent with respect to Dr. Davuluri's successful completion of four years of postgraduate medical study at SUNY, Syracuse, his possession of licenses to practice medicine in four other states, and his more than six years of practice at the Carl Albert Indian Health Facility.

¶ 10 The trial court held a hearing on Dr. Davuluri's application for a temporary restraining order on December 16, 1997. On December 30, 1997 the trial court entered a temporary restraining order reinstating Dr. Davuluri's temporary license to practice medicine pending a final determination of his appeal of the board's ruling.

¶ 11 The matter was tried on the merits on July 13, 1998; on July 20, 1998 the trial court entered an order holding for Dr. Davuluri and ordered the Board to issue to Dr. Davuluri a full and unrestricted license to practice medicine.

¶ 12 The trial court held that Dr. Davuluri had presented evidence to the Board that overcame all of the factors cited by the Board as reasons for denying Dr. Davuluri's application for a permanent and unrestricted license to practice medicine in Oklahoma. The trial court found that the requirement contained in Subsection B of 59 O.S. Supp. 1997 493.2 that a foreign applicant's training shall have been " … based on satisfactory completion of educational programs from a school with education and training substantially equivalent to that offered by the University of Oklahoma College of Medicine" was unconstitutionally vague. The trial court also found, however, that Dr. Davuluri had proved that his training had been substantially similar to that offered by the University of Oklahoma College of Medicine.

¶ 13 Finally, the trial court held that the Board's failure to consider Dr. Davuluri's successful completion of medial training in the United States, his possession of licenses to practice medicine in four other states, and his years of practice at the Carl Albert Indian Health Facility was "clear error." The trial court held that Dr. Davuluri had presented relevant, reliable, material, probative, and substantial evidence showing that he satisfied all statutory requirements for a license to practice medicine.

¶ 14 The Board appealed the trial court's decision claiming that (1) the district court lacked jurisdiction to consider the appeal of the Board's ruling; (2) the trial court improperly substituted its judgment for that of the Board; (3) the trial court erred in holding that 59 O.S. Supp 1997 493.2.B was unconstitutional; and (4) the Board's decision was supported by evidence in the record.

## ¶ 15 ISSUES

I.  Did the district court lack jurisdiction to consider Dr. Davuluri's appeal of the Board's decision?

II.  Did the trial court err in holding that the Board improperly ignored relevant evidence and that the totality of the evidence showed that Dr. Davuluri had satisfied the statutory requirements for a license to practice medicine in the state of Oklahoma?

We answer no to both questions.

## DISCUSSION

### I.

THE TRIAL COURT CORRECTLY HELD THAT IT HAD JURISDICTION TO CONSIDER DR. DAVULURI'S APPEAL OF THE BOARD'S DECISION

¶ 16 This is an issue of first impression. We have not previously addressed

whether an appeal from a decision of the Board of Medical Licensure and Supervision that has rejected an application for a medical license should be taken to the district court under the Administrative Procedures Act, 75 O.S. Supp.1992 318, or directly to this Court under the Oklahoma Allopathic Medical and Surgical Licensure and Supervision Act, 59 O.S. Supp.1998 513. We hold that such appeals are governed by the Administrative Procedures Act and must be taken to the district court.

¶ 17 The Board contends that the district court lacked jurisdiction to consider Dr. Davuluri's appeal of the board's decision because 59 O.S. Supp.1998 513 provides that appeals from "disciplinary actions upon the license of physicians" of the Board "shall be taken to the Supreme Court of this state." Although § 513 refers only to "disciplinary actions," the Board claims that our opinion in *State ex rel. State Board of Medical Examiners v. Naifeh*, 1979 OK 105, 598 P.2d 225 stands for the proposition that even appeals from a decision of the Board refusing to grant a license must be made directly to this Court. We disagree. In *Naifeh* we considered an appeal from an order of the Board, which placed a physician on probation. The action of the Board in *Naifeh* clearly was a "disciplinary action" of the Board. Thus, in *Naifeh*, we did not consider whether an appeal from a refusal by the Board to grant a license should be taken to the district court. *Naifeh*, therefore does not support the proposition that all Board appeals must be taken to this Court.

¶ 18 The Board also cites *DiMauro v. Oklahoma State Board of Medical Examiners*, 1989 OK 31, 769 P.2d 759 in support of its contention that appeals from the refusal to grant a medical license must be to this Court. Again, we disagree. Although the *DiMauro* appeal did arise from the Board's refusal to grant a license, the applicant appealed to this Court, not to the district Court. Thus, although we cited *Naifeh*, we were not presented with the issue in *DiMau-*

*ro* of whether the district court would have had jurisdiction to consider the applicant's appeal.

¶ 19 To the extent that either *Naifeh* or *DiMauro* might be construed to stand for the proposition that the district courts lack jurisdiction to consider appeals from refusal by the Board to grant a medical license, those opinions are expressly overruled. Similarly, the published opinion of the Court of Civil Appeals in *Metcalf v. Oklahoma State Board of Licensure and Supervision*, 1992 OK CIV APP 174, 848 P.2d 48 is also expressly disapproved to the extent that it might be construed to support the argument that district courts lack jurisdiction to hear appeals from a decision of the Board denying an application for a medical license.

¶ 20 The plain language of 59 O.S. 513 of the Medical and Surgical Licensure Act limits appeals to this Court from actions by the Board to those appeals from Board decisions that involve "disciplinary actions." Further, in § 495e of the Act,[3] the Legislature has made clear that appeals from Board actions to the Supreme Court are not exclusive. Section 494e expressly requires that appeals from Board orders denying re-registration be taken to the district court. As the Board's denial of Dr. Davuluri's application for a medical license clearly did not involve a disciplinary action, his appeal was governed by 75 O.S. Supp.1992 318. Dr. Davuluri's appeal was, therefore, properly filed "in the district court of the county in which the party seeking review resides," the district Court of Pontotoc County. Title 75 O.S. Supp.1992 318.B.2.

## II.

THE TRIAL COURT DID NOT ERR IN HOLDING THAT THE BOARD'S DECISION TO DENY DR. DAVULURI'S APPLICATION FOR A MEDICAL LICENSE WAS CLEARLY ERRONEOUS

¶ 21 The Board argues that the trial court substituted its judgment for that of the

---

3. Title 59 O.S.1991 495e provides:
   Any licensee whose reregistration application is rejected by the Board, shall have the right to appeal from such action to the district court of the county of residence. If the licensee does not reside or practice in Oklahoma, appeal shall be to the Oklahoma County District Court.

Board. The Administrative Procedures Act, 75 O.S. Supp.1997 250, et seq. governs appeals to the district courts from decisions of administrative agencies. The standard of review by the district courts is set out in 75 O.S.1991 321,[4] and 322.[5] Section 321 states that the district court's review of an administrative order "shall be confined to the record ."

■ ¶ 22 The Board argues that the trial court violated § 321 by considering new evidence in the form of witnesses and exhibits not presented to the Board. We disagree. The witnesses and exhibits about which the Board complains were presented at the December 16, 1997 hearing on Dr. Davuluri's application for a temporary restraining order. The review of the merits of the appeal were not presented to the trial court until a hearing held on July 20, 1998. No witnesses testified and no exhibits were offered at that hearing. Further, there is no indication in either the transcript of the July 20, 1998 hearing or the trial court's order following it that the trial court considered evidence outside the record made before the Board in arriving at its decision on the merits of Dr. Davuluri's appeal.

■ ¶ 23 The Board argues that the trial court should have deferred to its decision because the Board's "specialized knowledge may be used in the valuation of the evidence." Title 75 O.S.1991 310(4). While an administrative agency's decisions are ordinarily entitled to deference, when that decision is based on the agency's expertise, the rule does not apply here. The trial court found, and the record supports, that the Board ignored persuasive evidence of Dr. Davuluri's medical training and experience and qualifications as a physician. The Board has made no effort to explain its failure to consider these factors other than to characterize Dr. Davuluri's more than six years of experience as an OB/GYN as "unremarkable." We hold that the trial court did not err in deciding not to defer to the Boards medical expertise in this matter.

¶ 24 The Board's Order Denying Licensure relied, in part, on its conclusion that Dr. Davuluri's medical training was not substantially equivalent to that of the University of Oklahoma. The Board's attorney, however, admitted at the July 20, 1998 hearing that the Board had granted unrestricted licenses to other graduates of the medical school from which Dr. Davuluri had graduated. Further, the Board's secretary had granted Dr. Davuluri a temporary license.

■ ¶ 25 By statute, before granting a temporary license, the secretary was required to conclude that Dr. Davuluri was "an applicant demonstrably qualified for a full

4. Title 75 O.S.1991 321 provides:
   The review [of the order of an administrative agency] shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

5. Title 75 O.S.1991 322 provides:
   (1) In any proceeding for the review of an agency order, proceeding for the review of an agency order, the Supreme Court or the district court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:
   (a) in violation of constitutional provisions; or
   (b) in excess of the statutory authority or jurisdiction of the agency; or
   (c) made upon unlawful procedure; or
   (d) affected by other error of law; or
   (e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
   (f) arbitrary or capricious; or
   (g) because findings of fact, upon issues essential to the decision were not made although requested.
   (2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.
   (3) the reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant.

and unrestricted medical license under the requirements set by this act and the rules of the Board." Subsection D.1, 59 O.S. Supp. 1995 493.3.[6] It is apparent, therefore, that the Board's secretary found nothing inherently disqualifying about Dr. Davuluri's medical education. Further, no evidence that would have supported such a finding was presented at the Board's hearing on Dr. Davuluri's application for licensure. We find unconvincing the Board's argument that Dr. Davuluri was obliged to present such evidence, despite the Board secretary's implicit finding that Dr. Davuluri's medial education showed him to be "demonstrably qualified." Had the secretary refused to issue a temporary license because of concerns about Dr. Davuluri's medical education then the Board's argument would be more persuasive but the secretary did not do so.[7]

¶ 26 In its briefs, the board made much of Dr. Davuluri's failure to report all of his attempts to pass the FLEX exam, going so far as to characterize Dr. Davuluri's failure to do so as "misrepresentation." We note, however, that the Board in its Order Denying Licensure made no finding of misrepresentation. Dr. Davuluri took part I of the FLEX exam five times, never failing it by more that four points, and failing by only one point on his third and fourth attempts. Dr. Davuluri took Part II of the FLEX exam three times, failing by three points on his first attempt and two on his second attempt. In his application Dr. Davuluri accurately reported that he had taken Part II three

times but indicated that he had taken Part I three times rather than five.

¶ 27 We hold that the trial court did not abuse its discretion in holding that Dr. Davuluri's understatement of the number of times he had taken the FLEX exam did not misrepresent his qualifications. Having admitted that he had taken Parts I and II of the FLEX exam six times, there is no showing that Dr. Davuluri had anything to gain by failing to state in his application that he had actually taken them eight times. Thus, the record supports the trial court's finding that "There is no evidence in the record that Dr. Davuluri intentionally misrepresented the number of examination failures in order to acquire an Oklahoma license."

¶ 28 The Board makes no attempt to explain why Dr. Davuluri's qualifications to practice medicine in Oklahoma are not established by Dr. Davuluri's successful completion of four years of post graduate study at SUNY, Syracuse, his six years of successful OB/GYN practice at the Carl Albert Indian Health Facility, and his attainment of unrestricted licenses to practice medicine in the states of Michigan, Nebraska, South Dakota, and West Virginia. The trial court found that these factors are "relevant, reliable, material, probative, and substantial" and that "the Board's failure to consider such evidence is clear error." We hold that the record supports the trial court's findings and its order directing the Board to grant Dr. Davuluri an unrestricted medical license.

---

**6.** Title 59 O.S. Supp.1995 323.3 provides in material part:

. . .

D. The Board may authorize the secretary to issue a temporary medical license for the intervals between Board meetings. A temporary license shall be granted only when the secretary is satisfied as to the qualifications of the applicant to be licensed under this act but where such qualifications have not been verified to the Board. A temporary license shall:

   1. Be granted only to *an applicant demonstrably qualified for a full and unrestricted medical license under the requirements set by this act and the rules of the Board* ; and

   2. Automatically terminate on the date of the next Board meeting at which the applicant may be considered for a full and unrestricted medical license.

. . .

[Emphasis added.]

**7.** The trial court found that Subsection B of 59 O.S. Supp.1997 493.2, which provides that a foreign applicant's training shall have been " . . . based on satisfactory completion of educational programs from a school with education and training substantially equivalent to that offered by the University of Oklahoma College of Medicine," was unconstitutionally vague. The trial court also found, however, that Dr. Davuluri had proved that his training had been substantially similar to that offered by the University of Oklahoma College of Medicine. Because the record supports the trial court's finding that Dr. Davuluri's medical training qualifies him for a medical license, we assume for the purposes of this opinion that 59 O.S. 493.2. is constitutional and expressly decline to address here the issue of its constitutionality.

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, JUDGMENT OF THE TRIAL COURT AFFIRMED.

SUMMERS, C.J., HARGRAVE, V.C.J., LAVENDER, BOUDREAU, and WINCHESTER, JJ.,concur.

OPALA, J.—concurring in the court's disposition and dissenting from today's pronouncement.

KAUGER, J.—concurs in part, dissents in part.

OPALA, J., concurring in the court's disposition and dissenting from today's pronouncement.

¶ 1 Today's opinion *affirms* the nisi prius order that directs the State Board of Medical Licensure and Supervision [Board][1] to grant a medical license to the plaintiff-appellee, Dr. Chaudhury Dhana Koteswara Davuluri, M.D. [Dr. Duvuluri]. While the court's conclusion—*that this Board's order may be reviewed in the district court*—is consistent with my dissenting message in *Naifeh*,[2] its pronouncement reinfuses *Naifeh's* core holding with a claim to constitutional orthodoxy which I continue to reject. *Although I join in the court's disposition, I must recede from its opinion.* Writing separately, I (a) *reaffirm* today my commitment to the *Naifeh* dissent and (b) *condemn*, as offensive to Art. 5, § 46, Okl. Const.,[3] the court's trichotomous[4] division[5] of cases that may be brought for judicial review of the Board's decision. The division effected today impermissibly fashions *three different regimes* of appellate procedure for a *single indivisible class of litigants*—that of *healing-art practitioners* aggrieved by a licensing *or* disciplinary order of an agency charged with regulating their status and practice. The pronouncement *restricts to disciplinary decisions*[6] *alone the appeals* from the Board[7] which may be lodged in the Supreme Court and *excludes* from that avenue of corrective relief cases in which review is sought of the Board's *refusal initially to grant a medical license.* Appeals from orders that fall into the latter class are set apart and held to lie solely to a district court in the county of an aggrieved applicant's residence. The third class—implicitly formed—will comprise appeals from the Board's *license reregistration denial.*

1. The Board was formerly known as the State Board of Medical Examiners. 59 O.S.1981 § 481. Its name was changed in 1987 to that which it presently bears—the State Board of Medical Licensure and Supervision. 59 O.S.Supp.1987 §§ 481, 481.1.

2. *State ex rel. State Bd. of Med. Exam'rs v. Naifeh*, 1979 OK 105, 598 P.2d 225, 226 (Opala, J., dissenting).

3. The pertinent terms of Art. 5, § 46, Okl. Const., are:

   The Legislature shall not, except as otherwise provided in this Constitution, pass any *local or special law* authorizing:

   *       *       *

   Regulating the practice or jurisdiction of ... in judicial proceedings or inquiry before the courts ... or other tribunals ....
   (emphasis supplied).

4. The term *"trichotomous"* means "divided or dividing into three parts or into threes." Webster's Third New International Dictionary at 2442 (1961). The term *"trichotomy"* means a "dividing into three parts, elements, or classes" or "a system divided or divisible into three constituents or elements." *Id.* at 2442.

5. The trichotomy effected consists of these subclasses: appeals from (1) *disciplinary* sanctions, (2) initial license application's *denial,* and (3) *rejected* medical reregistration application. For a more detailed explanation of why and how the instant pronouncement divides appeals from the Board into three separate subclasses, *see* Part II of the opinion.

6. The court's pronouncement rests on the provisions of 59 O.S. Supp.1994 § 513, the statute in force when this appeal was lodged. Its terms provided in pertinent part:

   The Board is hereby given quasi-judicial powers while sitting as a Board for the purpose of *revoking, suspending or imposing other disciplinary actions* upon the license of physicians or surgeons of this state, and appeals from its decisions shall be taken *to the Supreme Court* of this state within thirty (30) days of the date that a copy of the decision is mailed to the appellant, as shown by the certificate of mailing attached to the decision ....
   (emphasis supplied).
   The changes in the 1998 version do not affect the issues in contest here.

7. For the statutory scheme of regulation by the State Board of Medical Licensure and Supervision, see 59 O.S.Supp.1998 §§ 481 et seq.

Those appeals are statutorily required to be lodged in the district court.[8]

## I

## MY RECOMMITMENT TO

## THE *NAIFEH* DISSENT[9] OF YORE

¶ 2 *Naifeh* holds that the provisions of 59 O.S. *1971* § 513[10] afford a constitutionally permissible barrier to a medical practitioner's **district court appeal** for review of the Board's order in a *disciplinary* proceeding. My own conclusion in *Naifeh*, to which I continue to cling, was that the court's interpretation of § 513 offended the due process clause of Art. 2, § 7, Okl. Const.[11] Persons licensed as physicians and surgeons have been since 1935 (and are now) the *only group of healing-art practitioners who may appeal directly to the Supreme Court from the Board's discipline-related orders.* All persons licensed as healing-art practitioners and all those in various health-care fields of practice[12] have access to two appeals,[13] but this benefit stands explicitly withheld from a single profession—that of physicians and surgeons. The due process clause in Art. 2, § 7, Okl. Const., has a definitional range that is coextensive with its federal counterpart.[14] The latter (and hence our own) contains a built-in *antidiscrimination component* which affords protection against unreasonable (or unreasoned) classifications that serve no "important governmental objectives."[15]

¶ 3 Neither in *Naifeh* nor here can I isolate a single compelling governmental objective that would legitimately support the discriminatory regime for appeals by physicians and surgeons. When tested by the standards of due process, both current and of yore, and by the standards of Art. 5, § 46, Okl. Const.,[16] the court's isolation of the Board's disciplinary rulings for a different appellate regime cannot pass constitutional muster.

## II

## TODAY'S TRICHOTOMY OF BOARD

## APPEALS IS CONTRARY TO THE APA'S UNIFORMITY

## MANDATE FOR REVIEW OF *ADMINISTRATIVE DECISIONS*

¶ 4 The Administrative Procedures Act [APA] envisions *a single regime of judicial review* for agency rulings, which is to be *exclusive of all others* except when distinctive norms of procedure are mandated by some *contrary constitutional provisions*.[17] Section 318 of the APA introduced the con-

---

**8.** 59 O.S.Supp.1994 § 495e. *See* its text, *infra* note 25.

**9.** *Naifeh, supra* note 2 at ¶¶ 1–8, 225–26 (Opala, J., dissenting).

**10.** The terms of 59 O.S. *1971* § 513 (which are similar to the version applicable to this cause, see *supra* note 6) provided:

The Board of Medical Examiners of the State of Oklahoma is hereby given quasi-judicial powers while sitting as a Board for the purpose of revoking or suspending the license of physicians and/or surgeons of this State, and appeals from its decisions shall be taken to the Supreme Court of this State . . . .

**11.** The terms of Art. 2, § 7, Okl. Const., are:

No person shall be deprived of life, liberty, or property, without due process of law.

**12.** See the detailed Appendix that follows the text of this opinion for citations to various licensing and regulatory acts that govern the multitude of healing-art and health-care practitioners. *Physicians and surgeons remain the only licensed heal-

ing-art practitioners and health-care providers who stand excluded from district court access for appeals in disciplinary cases.*

**13.** 75 O.S.Supp.1992 § 318. *See* its text, *infra* note 18. An appeal lies first to the district court and thence here, with an opportunity afforded one for a third (certiorari) review if the second appeal were to be assigned to the Court of Civil Appeals.

**14.** *McKeever Drilling Co. v. Egbert*, 1934 OK 763, 40 P.2d 32, 35.

**15.** *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979); *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

**16.** For the pertinent terms of Art. 5, § 46, Okl. Const., see *supra* note 3.

**17.** *Conoco, Inc. v. State Dept. of Health of State of Okl.*, 1982 OK 94, ¶ 12, 651 P.2d 125, 128–29.

cept of *initial district court review on the record* which is then to be followed by an appeal to this court.[18] Any notion that appeals from the Board's decisions, though governed by the APA, may be modified by *nonconforming statutory provisions* would *defeat* and *destroy* the APA's primary mandate for *providing a uniform code of adjective law* to govern all state regulatory agencies. *Departures from this code cannot survive unless they be explicitly commanded by a contrary provision of the state constitution.*[19]

¶ 5 The Board is a State agency *subject to the APA-structured Art. II procedure.*[20] It is not among entities explicitly exempted from compliance with the Act's provisions.[21] The regime of APA-prescribed judicial review governs all licensed practitioners in medicine and surgery. Its norms are not contrary to any applicable constitutional text that explicitly targets physicians and surgeons. Today's pronouncement *impermissibly trichotomizes* appeals from the Board's decisions into disuniformity-injecting subclasses—cases for review of (1) *disciplinary sanctions*, which by the language of 59 O.S.Supp.1994 513 [22] are said to lie exclusively ·to the Supreme Court; (2) an *initial license application's denial*, for the appellate cognizance of which the district court is today declared to be competent,[23] and (3)

---

**18.** The pertinent terms of 75 O.S.Supp.1992 § 318 are:

A. 1. Any party *aggrieved by a final agency order* in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof *pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title.*
2. This section shall not prevent resort to other means of review, redress, relief or trial de novo, available *because of constitutional provisions.*
3. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review.
B. 1. The judicial review prescribed by this section for final agency orders, *as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions,* by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.
2. In *all other instances, proceedings for review shall be instituted by filing a petition, in the district court* of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title. * * *
(emphasis supplied).
*Robbins v. Oklahoma Alcoholic Beverage Control Bd.,* 1969 OK 202, ¶ 12, 461 P.2d 610, 612; *Frank v. Okla. Real Estate Commission,* 1973 OK 67, ¶ 2–10, 512 P.2d 190, 191–92; ·*Baggett v. Webb,* 1976 OK 176, ¶¶ 16, *21,* 557 P.2d 433, 435; *Trask v. Johnson,* 1969 OK 57, ¶ 9, 452 P.2d 575, 577–78.

**19.** *Trask, supra* note 18 at 578; *Lowry v. Board of Chiropractic Examiners,* 1981 OK 80, ¶¶ 7–10,

631 P.2d 737, 738–39; *Roussel v. State ex rel. Grimes,* 1980 OK 101, ¶¶ 23–25, 614 P.2d 53, 58–59; *Isbell v. State,* 1979 OK 156, ¶ 6, 603 P.2d 758, 760; *Baggett, supra* note 18 at 435; *Frank, supra* note 18 at 192.

**20.** The terms of 75 O.S.1991 § 250.1(B) provide in pertinent part:

A. The Administrative Procedures Act shall be composed of two Articles. Sections 250, 250.1, 250.3, 250.4, 250.5, and 250.8 of this title are applicable to both Articles I and II. Article I relating to agency filing and publication requirements for rules shall consist of Sections 250.2, 250.6, 250.7 and 250.9 through 308.2 of this title and Section 5 of this act. Article II relating to agency notice and hearing requirements for individual proceedings shall consist of Sections 308a through 323 of this title.
B. Except as is otherwise specifically provided in Section 250.4 of this title, all agencies shall comply with the provisions of Article I and Article II of the Administrative Procedures Act.

**21.** The terms of 75 O.S.Supp.1994 § 250.4(B) list those State agencies (or those classes of agency activities) explicitly exempted from compliance with the provisions of Article II of the APA. 75 O.S.1991 §§ 308a et seq. The Board of Medical Licensure and Supervision is not among the agencies that stand exempted, nor is review of the Board's disciplinary orders so exempted.

**22.** For the pertinent terms of 59 O.S.Supp.1994 § 513 see *supra* note 6.

**23.** The court's conclusion, in which I concur, is *without an explicit statutory warrant.* The licensure statutes (59 O.S.1991 §§ 493.1–493.4, 494.1, 495) *are devoid of any explicit prescription for appeals from denial of a physician's or surgeon's initial license application.*

*rejected medical reregistration application,*[24] governed by the explicit terms of 59 O.S.Supp.1994 495e,[25] which designate the district court (of the county of licensee's residence) as the proper forum for corrective relief.

## III

**THE PROCEDURAL UNIFORMITY COMMANDED BY ART. 5, § 46, OKL.CONST.,**[26] **REQUIRES THAT (A) § 318 OF THE APA BE APPLIED TO GOVERN THE REVIEW PROCESS IN ALL OF THE BOARD'S LICENSING AND DISCIPLINARY ORDERS AND THAT (B)** *NAIFEH* **BE OVERRULED AS A CONSTITUTIONALLY FLAWED EXPOSITION OF OKLAHOMA'S LAW**

¶ 6 Art. 5, § 46, Okl. Const., mandates in absolute terms *statewide procedural uniformity* for an entire class of similarly situated persons or things.[27] Its relevant terms *expressly prohibit* the legislature from *regulating by special or local law procedure before the courts.*[28] Although directed to the legislature, the terms of § 46 are equally binding on the courts.[29] **This court's own jurisprudence, no less than the legislature's enactments, must faithfully conform to the fundamental law's prohibition against disuniform (or non-uniform) laws on prohibited subjects.**[30] *Judicial procedure is a subject explicitly protected from invasion by the Legislature- and hence by the court-injected disuniformity.*

¶ 7 *Appeals by healing-art and health-care practitioners for review of both licensing and disciplinary decisions of the pertinent regulatory agency comprise but a single indivisible class.* All statutes governing judicial review of those agency orders must be symmetrical and apply across the board.[31] **There is no constitutional exemption from the uniformity-of-procedure mandate which could save from invalidation those provisions of § 513**[32] **which authorize a Supreme Court appeal for physicians and surgeons who deem themselves aggrieved by the Board's disciplinary ruling.**

¶ 8 Today's reaffirmation of *Naifeh*—an opinion that singles out for less favorable adjective-law treatment physicians and surgeons who seek corrective relief from the Board's *disciplinary dispositions* by denying

**24.** The terms of 59 O.S.Supp.1994 § 495a.1 require licensees annually to demonstrate to the Board their continuing qualification to practice in the field of medicine and surgery.

**25.** The terms of 59 O.S.Supp.1994 § 495e are:

Any licensee whose *reregistration application* is rejected by the Board, shall have the right to *appeal* from such action *to the district court* of the county of residence. If the licensee does not reside or practice in Oklahoma, *appeal shall be to the Oklahoma County District Court.* (emphasis supplied)

**26.** For the text of Art. 5, § 46, Okl. Const., see *supra* note 3.

**27.** *See Johnson v. Tony's Town Mister Quik,* 1996 OK 138, ¶ 5, 915 P.2d 355, 357-58; *Reynolds v. Porter,* 1988 OK 88, ¶¶ 13-19, 760 P.2d 816, 822; *Maule v. Independent School Dist. No. 9,* 1985 OK 110, ¶ 12, 714 P.2d 198, 203-204.

**28.** *Maule, supra* note 27 at 203-204; *Reynolds, supra* note 27 at 822; *Great Plains Federal S & L Assn. v. Dabney,* 1993 OK 4, ¶ 12, 846 P.2d 1088, 1095-1096 (Opala, J., concurring). "Fundamental fairness cannot be afforded except within a framework of orderly procedure." *Joiner v. Brown,* 1996 OK 112, ¶ 6, 925 P.2d 888, 890,

citing *Pryse Monument Company v. District Court of Kay County,* 1979 OK 71, ¶ 5, 595 P.2d 435, 438. " ' * * * It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law.' " *Joiner, supra* at 890 n. 4, quoting from *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring).

**29.** *Reynolds, supra* note 27 at 822.

**30.** *Id.*

**31.** The across-the-board symmetry came to be extended by the court's adoption of a uniform *standard of review* for academically credentialed state licensed professionals in medicine and dentistry. *Johnson v. Bd. of Gov. of Registered Dentists,* 1996 OK 41, ¶ 5, 913 P.2d 1339, 1351-52 (Opala, J., concurring); *Robinson v. State ex rel. Okl. State Bd. of Medical Licensure and Supervision,* 1996 OK 145, ¶ 10, 916 P.2d 1390, 1392-1393.

**32.** For the pertinent terms of 59 O.S.Supp.1994 § 513 see *supra* note 6.

them the benefit afforded other practitioners of the healing arts—offends Art. 5, § 46. A rule of civil appellate procedure applicable *solely to physicians and surgeons* contravenes the notion of adjective-law uniformity so absolutely imposed by § 46. Appeals from disciplinary orders brought to the district court under § 513 cannot pass constitutional muster when tested by the standards of § 46. Because *Naifeh* plainly *offends* the uniformity-of-procedure strictures clearly mandated by that section, I would overrule its holding as a flawed exposition of Oklahoma's fundamental law.

## SUMMARY

¶ 9 I *reaffirm* today, *with undiminished fervor*, my commitment to the *Naifeh* dissent, where the court *held* the provisions of 59 O.S.1971 513 to be free from constitutional infirmity and *required* that all appeals

from the Board's disciplinary decisions against physicians and surgeons be lodged in the Supreme Court, even though appeals from agencies that regulate other healing-art professionals and health-care providers are required to be made to the district court. *Naifeh violates § 46 as well as the antidiscrimination component of Oklahoma's due process clause.*

¶ 10 Today's decision imposes an impermissible trichotomous division of appeals brought from the Board. It is *contrary* to the APA-created uniformity mandate as well as *offensive* to Art. 5, § 46, Okl. Const. Its terms foist on the body of Oklahoma's jurisprudence *an interdicted special-law* that adversely affects the indivisible class of licensed healing-art professionals. While the court's recent § 46 uniformity-of-procedure jurisprudence will not receive plaudits as entirely Simon-pure,[33] its pronouncement in this case

33. **[I]** *Recent cases that address themselves to the uniformity-of-procedure mandate.* State ex rel. Macy v. Board of County Com'rs of County of Oklahoma, 1999 OK 53, ¶ 14, 986 P.2d 1130, 1139 (dealing with uniformity of procedure for county budget protests by county government and county taxpayers); *Nelson v. Nelson,* 1998 OK 10, ¶¶ 2–14, 954 P.2d 1219, 1229–33 (Opala, J., concurring in part and dissenting in part) (addressing the statewide (territorial) uniformity mandate for rules of civil procedure and the interdiction of countywide (or local) rules affecting the powers and duties of county officers); *Bank IV Oklahoma v. Southwestern Bank & Trust Co.,* 1997 OK 31, ¶ 5–6, 935 P.2d 323, 327–29 (Opala, J., dissenting) (discussing the procedural uniformity mandate for a single regime of appellate practice in the 77 counties); *Rollings v. Thermodyne Industries, Inc.,* 1996 OK 6, ¶ 13, 910 P.2d 1030, 1040–41 (Opala, J., concurring in result) (discussing the uniformity of procedure for a single class of "contract litigants"—which includes those *with* or *without* a predispute arbitration agreement); *Price v. Walters,* 1996 OK 63, ¶ 9, 918 P.2d 1370, 1383–86 (Opala, J., dissenting) (addressing the procedural symmetry of Oklahoma's remedial regime for similarly situated litigants); *Sparlin v. Jackson,* 1996 OK 69, ¶ 8, 918 P.2d 740, 742–43 (dealing with the uniformity of procedure for appeals from the district court and from the Corporation Commission); *Tony's Town Mister Quik, supra* note 27 at 357–58 (dealing with the procedural symmetry of general rules of appellate practice and their across-the-board application to the review process of workers' compensation decisions); *Meadows v. Pittsburg County Board of County Commissioners,* 1995 OK 65, ¶ 4, 898 P.2d 741, 743–44 (addressing the procedural uniformity mandate

for appeals in both public and private tort actions); *Southwestern Bell Telephone Co. v. Oklahoma Corp. Com'n,* 1994 OK 38, ¶¶ 4, 28–29, 873 P.2d 1001, 1011–12, 1026–27 (Opala, J., dissenting) (addressing uniformity of procedure for individual ratemaking in APA-governed agencies and before the Corporation Commission); *Haynes v. Tulsa Public Schools Transit,* 1994 OK 86, ¶¶ 4–5, 879 P.2d 128, 129–31 (discussing the procedural uniformity of the cost-deposit regime for district court appeals as well as for review proceedings from other tribunals); *Massey v. Farmers Insurance Group,* 1992 OK 80, ¶ 12, 837 P.2d 880, 891 (Opala, C.J., concurring in result) (addressing procedural uniformity in the trial mode for an entire class of contract-litigating parties); *State v. Lynch,* 1990 OK 82, ¶ 9, 796 P.2d 1150, 1168 (Opala, V.C.J., concurring in part and dissenting in part)(addresses the procedural uniformity mandate for a public defense system that would equalize the public-service burden among lawyers in all counties); *Henry v. Corporation Com'n of State of Okl.,* 1990 OK 103, ¶ 5, 1990 OK 104, 825 P.2d 1262, 1271–72 (Opala, V.C.J., concurring)(dealing with uniformity of an agency's procedural regime that governs notice of proposed utility rate increases); *Johnson v. District Court of Oklahoma County,* 1987 OK 47, ¶ 2, 738 P.2d 151, 154 (Opala, J., concurring)(discussing the interdiction of legislative acts that would make general rules of practice before the courts subject to some narrow exception applicable to discovery only in a select subclass of torts—medical and hospital malpractice suits—as distinct from other death or personal injury litigation); *Johnson v. State Board, supra* note 31 at 1351–52 (Opala, J., concurring)(discussing the across-the-board symmetry for standard of persuasion for license revocation of dentists and

signals an even wider departure from the attempted symmetry of yesteryear.

¶ 11 In short, I would hold that § 46 *commands* that all appeals from the Board be lodged in the district court. This would preserve the uniformity-of-procedure mandate for judicial review by appeals of healing-art and health-care practitioners from *all* rulings of their regulatory agencies.

¶ 12 I hence *concur only insofar* as the court affirms the district court's disposition which directs the Board to grant Dr. Davalu-ri a medical license; *I dissent from today's pronouncement*. The latter reinfuses *Naifeh* with a claim to constitutional orthodoxy which I would once again withhold from Oklahoma jurisprudence.

## ¶ 13 APPENDIX

¶ 14 Licensed practitioners of the healing-art ,and health-related fields (all statutory citations are to Title 59, Oklahoma Statutes, Professions and Occupations).

| PROFESSION & REGULATORY | APPEALS PROVISIONS | APPEALS TO |
| --- | --- | --- |
| ¶ 15 **I. HEALING ARTS** | | |
| ¶ 16 1. Chiropractic (O.S.1991) §§ 161.1 *et seq.* | (O.S. Supp.1999) §§ 161.12 (C), 161.13—Direct Appeal | District Court |
| ¶ 17 2. Dentistry & Dental Hygiene 34 (O.S.1991) §§ 328.1 *et seq* | (O.S. Supp.1996) § 328.44a (B) Direct Appeal | District Court |
| ¶ 18 3. **Medicine and Surgery** (O.S.1991) §§ 481 *et seq.* | **(O.S.Supp.1998) § 513** Direct appeal | **Supreme Court** |
| ¶ 19 4. Optometry (O.S.1991) §§· 581 *et seq.* | APA seems to govern - no specific appeal provision | District Court |
| ¶ 20 5. Osteopathy (O.S.1991) §§ 620 *et seq.* | (O.S.Supp.1993) § 637 (D) Direct appeal | District Court |
| ¶ 21 6. Physician Assistant (O.S.Supp.1998) §§ 519.1 *et seq.* | APA seems to govern - no specific appeal provision | District Court |
| ¶ 22 7. Podiatry (O.S.1991) §§ 135.1 *et seq.* | (O.S.Supp.1997) § 147 (D) Direct appeal | District Court |

similarly situated professionals); *A.E. v. State*, 1987 OK 76, ¶ 14, 743 P.2d 1041, 1049 (Opala, J., concurring in Parts I–IV and dissenting from Part V)(discussing the procedural uniformity for parental termination proceedings).

[II] *Cases dealing with uniformity-of-procedure mandate as well as with interdiction against local or special laws regulating (a) limitation of actions and (b) elections.*
*Cruse v. Bd. of County Com'rs of Atoka County*, 1995 OK 143, ¶ 9, 910 P.2d 998, 1008–09 (Opala, J., dissenting) (addressing the procedural uniformity mandate and interdiction of special laws that regulate limitation of actions for public torts and private wrongs); *Rockwell International v. Hampton*, 1994 OK 137, 886 P.2d 992, 993 (Kauger, J., dissenting)(addressing the procedural uniformity-of-time limits for counterappeals and cross-appeals for review of district court rulings and for review proceedings from workers' compensation decisions); *Schones v. Town of Canute*, 1993 OK 90, 858 P.2d 436, 442–43 (Opala, J., dissenting) (discussing the interdiction of special time bars for insurance litigation as distinct from other contract actions); *Simpson v. Dixon*, 1993 OK 71, ¶¶ 15–17, 853 P.2d 176, 183–85 (dealing with the statewide procedural uniformity in municipal election protests); *Ross v. Kelsey Hayes, Inc.*, 1991 OK 83, ¶¶ 8, 10, 825 P.2d 1273, 1283–84 (Opala, C.J., dissenting) (addressing the uniformity of procedure for defendants (both *served* and *unserved* in an earlier suit) for application of the one-year savings provision—12 O.S.1991 100 ); *Reynolds, supra* note 27 at 822 (dealing with interdiction of special laws regulating limitations in civil actions, which protects an arbitrarily selected group of tortfeasors but is not imposed upon other tortfeasors in the class); *Roberts v. South Oklahoma City Hospital Trust*, 1986 OK 52, ¶ 3, 742 P.2d 1077, 1084–85 (Opala, J., concurring)(discussing procedural uniformity *of the laws* regulating limitation of actions and *of the general norms* of trial practice for *all nonpublic tortfeasors* as distinct from governmental tortfeasors).

34. The healing art of dentistry appears to include such providers as dentists, dental hygienists, dental assistants, dental laboratory technicians, and holders of a permits to operate a dental laboratory. 59 O.S.Supp.1996 § 328.44a(A)(B).

¶ 23  II.  HEALTH–RELATED FIELDS

| | | | |
|---|---|---|---|
| ¶ 24 | 1. Athletic Trainers (O.S.1991) §§ 525 *et seq.* | APA seems to govern - no specific appeal provisions | District Court |
| ¶ 25 | 2. Barbers (O.S.1991) §§ 61.1 *et seq.* | APA seems to govern - no specific appeal provision | District Court |
| ¶ 26 | 3. Cosmetology (O.S.Supp.1994) §§ 199.1 *et seq* | (O.S.Supp.1994) § 199.3 (B)(8) Direct appeal | District Court |
| ¶ 27 | 4. Licensed Dietitians 35 (O.S.1991) §§ 1721 *et seq.* | APA seems to govern - no specific appeal provisions | District Court |
| ¶ 28 | 5. Electrology (O.S.1991) §§ 536.1 *et seq.* | APA seems to govern- no specific appeal provisions | District Court |
| ¶ 29 | 6. Embalmers (O.S.1991) §§ 395.1 *et seq.* | (O.S.1991) §§ 396.12f(C) Direct appeal | District Court |
| ¶ 30 | 7. Licensed Professional Behavioralist (O.S.1991) §§ 1930 *et seq.* | APA seems to govern - no specific appeal provisions | District Court |
| ¶ 31 | 8. Licensed Perfusionist (O.S. Supp.1996) §§ 2051 *et seq.* | (O.S. Supp.1996) § 2068 (B) Direct appeal | District Court |
| ¶ 32 | 9. Licensed Professional Counselor (O.S.Supp.1995) §§ 1901 *et seq.* | APA seems to govern - no specific appeal provisions | District Court |
| ¶ 33 | 10. Marital and Family Therapist (O.S.1991) §§ 1925.1 *et seq.* | (O.S.1991) §§ 1925.13 1925.15(C)—Direct appeal | District Court |
| ¶ 34 | 11. Nurses (O.S.1991) §§ 567.1 *et seq.* | (O.S.Supp.1996) § 567.8(G) Direct appeal | District Court |
| ¶ 35 | 12. Occupational Therapy (O.S.1991) § 888.1 *et seq.* | APA seems to govern no specific appeal provisions | District Court |
| ¶ 36 | 13. Pharmacy (O.S.1991) §§ 353 *et seq.* | (O.S.Supp.1993) § 353.26(B) Direct appeal | District Court |
| ¶ 37 | 14. Physical Therapy (O.S.1991) §§ 887.1 *et seq.* | APA seems to govern - no special appeal provisions | District Court |
| ¶ 38 | 15. Psychology (O.S.1991) §§ 1351 *et seq.* | (59 O.S.Supp.1998) § 1370 (D) Direct appeal | District Court |
| ¶ 39 | 16. Respiratory Care (O.S. Supp.1995) §§ 2026 *et seq.* | (O.S. Supp.1995) § 2041(C) Direct appeal | District Court |
| ¶ 40 | 17. Sanitarian (or environmental specialist) (O.S.1991) §§ 1150.1 *et seq.* | APA seems to govern - no specific appeal provisions | District Court |
| ¶ 41 | 18. Speech Pathology and Audiology (O.S.Supp.1998) §§ 1601 *et seq.* | (O.S.Supp.1998) § 1619(D) Direct appeal | District Court |
| ¶ 42 | 19. Veterinarian (O.S.1991) §§ 698.1 *et seq.* | (O.S.Supp.1999) § 698.14a(M)(3) Direct appeal | District Court |
| ¶ 43 | 20. Water & Sewage Works (O.S.1991) §§ 1101 *et seq.* | (O.S.Supp.1994) § 1111 Direct appeal | District Court |

**35.** The category of "licensed dietitian" includes both *licensed* and *provisionally licensed* dieti-tians. 59 O.S.1991 § 1722.