Michelle Roberson REYNOLDS, Petitioner–Plaintiff,

v.

Warren H. PORTER, M.D., Respondent–Defendant.

No. 60253.

Supreme Court of Oklahoma.

July 19, 1988.

---

James B. Browne, Thomas Wakely, Oklahoma City, for petitioner-plaintiff.

John Wiggins, George W. Paull, Jr., Cynthia L. Sparling, Short, Barnes, Wiggins Margo & Adler, Oklahoma City, for respondent-defendant.

Carolyn S. Thompson, Howard K. Berry, Jr., Gary L. Brooks, Oklahoma City, for amicus curiae Oklahoma Trial Lawyers Ass'n.

OPALA, Justice.

The petitioner, a plaintiff in a medical malpractice action, challenges the constitutionality of the three-year proviso in 76 O.S.1981 § 18 which limits the scope of recoverable damages when an action is brought more than three years from the date of the injury. She asserts that § 18 violates [1] the Equal Protection Clause of the U.S. Constitution by penalizing only victims of health care providers' malpractice without a corresponding penalty for victims of other tortfeasors; [2] Oklahoma's constitutional prohibition against special laws limiting civil actions, Art. 5, § 46, by creating a limitation period which protects a special class of tortfeasors; [3] Oklahoma's constitutional prohibition against granting exclusive rights, privileges or immunities, Art. 5, § 51, by granting immunity from suit to the health care profession for certain types of damages; and [4] Oklahoma's constitutional prohibition against the limitation of amounts recoverable for injuries resulting in death, Art. 23 § 7.

We rest our holding on adequate and independent state grounds [1] and pronounce that the three-year proviso in 76 O.S.1981 § 18 is a special statute of limitation absolutely prohibited by Art. 5, § 46 of the Oklahoma Constitution.[2] We therefore find it unnecessary to address the remaining contentions.

\* \* \* \* \* \*

1. *See Michigan v. Long,* 463 U.S. 1032, 1038–1042, 103 S.Ct. 3469, 3475–3477, 77 L.Ed.2d 1201 [1983].

2. The terms of Art. 5, § 46, Okl. Const., provide: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

For limitation of civil or criminal actions...."

For the pertinent text of § 46, see also Part II, *infra.*

## FACTS

The respondent doctor performed on the petitioner the alleged negligent hemorrhoidectomy on May 16, 1976. She claims she did not learn that she had been injured by the doctor's negligence until May 22, 1980. She filed a medical malpractice action April 27, 1982. The trial court gave the defendant a partial summary adjudication, ruling that although under 76 O.S. 1981 § 18 the action was timely brought within two years of the injury's discovery, because it was filed more than three years from the date of the injury, the petitioner is limited to recovering actual medical and surgical expenses incurred or to be incurred. This ruling barred the petitioner's remedy for past and future loss of income, pain and suffering, humiliation and embarrassment, and permanent disability. The trial court certified for our review in advance of judgment petitioner's attack on the constitutionality of the three-year proviso in 76 O.S.1981 § 18 as it operates to limit damages. We grant the review sought to settle the first-impression question.

## INTRODUCTION

The statute under inquiry, 76 O.S.1981 § 18, provides:

"An action for damages for injury or death against any physician, health care provider or hospital licensed under the laws of this state, whether based in tort, breach of contract or otherwise, arising out of patient care, shall be brought within two (2) years of the date the plaintiff knew or should have known, through

the exercise of reasonable diligence, of the existence of the death, injury or condition complained of; *provided any action brought more than three (3) years from the date of the injury shall be limited to actual medical and surgical expenses incurred or to be incurred as a direct result of said injury,* provided, however, the minority or incompetency when the cause of action arises will extend said period of limitation." [Emphasis supplied.]

This court addressed the constitutionality of the two-year limitation in *McCarroll v. Doctors General Hospital.*[3] It upheld that time restriction against challenges under the Equal Protection Clause of the U.S. Constitution and the prohibitions of Art. 5, §§ 46 and 51 of the Oklahoma Constitution. Today we consider the constitutionality of the emphasized portion of § 18 on which *McCarroll* explicitly declined to pass. We recognize initially that legislative acts are presumed to be constitutional and that courts of review will uphold a statute unless it is clearly inconsistent with our fundamental law.[4]

### I

### THE THREE–YEAR PROVISO IN 76 O.S.1981 § 18 IS A STATUTE OF LIMITATION WITHOUT THE BENEFIT OF A DISCOVERY RULE [5]

 Because there is a strong policy in Oklahoma against unwarranted modification of statutory limitations,[6] we must first determine whether the three-year proviso is a *statute of limitation* or a *statute of repose.* Early treatise writers and judges considered time bars created by

---

**3.** Okl., 664 P.2d 382, 385–386 [1983].

**4.** *Black v. Ball Janitorial Service, Inc.,* Okl., 730 P.2d 510, 512 [1986]; *Reherman v. Oklahoma Water Resources Bd.,* Okl., 679 P.2d 1296, 1300 [1984] and *Earnest, Inc. v. LeGrand,* Okl., 621 P.2d 1148, 1152 [1981].

**5.** See *infra* note 8 for the definition of the term "discovery rule."

**6.** Statutory limitations may not be abridged or waived by contract. Art. 23, § 9, Okl. Const.; *Uptegraft v. Home Ins. Co.,* Okl., 662 P.2d 681, 686 [1983]. Limitations may not be fashioned by courts. This is so because limitations are traditionally recognized as springing from statu-

tory sources. *Lake v. Lietch,* Okl., 550 P.2d 935, 937 [1976]. The only limitation developed by the common law was the so-called "immemorial prescription." It was not until the 17th Century that Parliament passed legislation providing fixed time limits within which an action must be brought. See Opala, *Praescriptio Temporis* and its Relation to Prescriptive Easements in the Anglo–American Law, 7 Tulsa L.Rev. 107, 111–113, 124 [1971]. By the terms of Art. 5, § 46, Okl. Const., the legislature is also prohibited from tampering with limitations by passage of local or special acts. *City of Tulsa v. McIntosh,* 141 Okl. 220, 284 P. 875, 877 [1930].

statutes of limitations, escheat and adverse possession as periods of repose.[7] As the courts began to modify statutory limitations by applying the "discovery rule",[8] legislatures responded by enacting absolute statutes of repose. Modern limitations and statutes of repose are similar because they both provide repose for the defendant. Yet, they are significantly different since a statute of limitation merely extinguishes the plaintiff's remedy while a statute of repose bars a cause of action before it arises.[9] In practical terms, a statute of repose marks the boundary of a substantive right whereas a statute of limitation interposes itself only procedurally to bar the remedy after a substantive right has vested.[10]

 The time prescribed by a statute of repose runs from a specific negligent act or event regardless of when the harm or damage occurs. A limitation period runs from the time the elements of a cause of action arise. It may or may not allow for the plaintiff's discovery of the injurious event.[11] Oklahoma's three-year provision here under scrutiny runs from the "date of the injury". That date may be construed as 1) the date the damage or harm occurred,[12] 2) the date of the doctor's negligent omission or commission,[13] or 3) the date the claimant discovers the injury.[14] Applying time-honored canons of statutory construction, we choose the first of these options and hold today that the time prescribed by the three-year provision runs from the date the damage or harm occurs.

Were we to settle instead on the third option, the three-year provision would become an extended duplicate of the two-year restriction—a three-year statutory limitation with the benefit of a discovery rule. That could not have been the intent of the legislature. Under the second option, the statute would act as one of repose in cases where harm from the negligent omission or commission occurs more than three years later. In such a case, the three-year provision would extinguish the right to bring an action for all damages except actual medical and surgical expenses before the right to bring the action can arise.

In the majority of malpractice cases, as in the case before us, the injury occurs

7. See *McGovern, infra* note 11 at 583 and *Pillow v. Roberts,* 54 U.S. (13 How.) 472, 476, 14 L.Ed. 228, 231 [1851].

8. The "discovery rule" allows limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury. Its appearance in our decisions is a fairly recent development in Oklahoma's common law. See *Continental Oil Co. v. Williams,* 207 Okl. 501, 250 P.2d 439, 441 [1952]; *Seitz v. Jones,* Okl., 370 P.2d 300, 302 [1962] and *Gouin v. Continental Oil Co.,* Okl.App., 590 P.2d 704, 707 [1979].

9. See *Matter of Estate of Speake,* Okl., 743 P.2d 648, 652–653 [1987]; *Smith v. Westinghouse Elec. Corp.,* Okl., 732 P.2d 466, 468, n. 11 [1987]; *Baccus v. Banks,* 199 Okl. 647, 192 P.2d 683, 691 [1948], appeal dismissed *Reeder v. Banks,* 333 U.S. 858, 68 S.Ct. 743, 92 L.Ed. 1138, reh. den. 333 U.S. 883, 68 S.Ct. 911, 92 L.Ed. 1158 [1948] and *Turner Const. Co., Inc. v. Scales,* 752 P.2d 467, 469, n. 2 [Alaska 1988]. In *Westinghouse, supra* at 468, note 11, the court stated:

"... [A] *statute of limitation* serves to place a limit on the plaintiff's time to bring an action. After the prescribed time period has lapsed, a statute of limitation serves to *extinguish the remedy* for the redress of an *accrued* cause of action. A *statute of repose,* by way of contrast, restricts potential liability by limiting the time during which a cause of action can arise. It thus serves to bar a cause of action before it accrues. In a practical sense, a *statute of limitation* implicitly seeks to punish those who sleep on their rights, while the *statute of repose* operates to bar some plaintiffs' recovery, no matter how diligent they may have been in asserting their claims...." [Emphasis in the opinion.]

10. See *Loyal Order of Moose, Lodge 1785 v. Cavaness,* Okl., 563 P.2d 143, 146 [1977], where we held that it is within the legislature's power to enact a statute of repose modifying or abolishing a common-law cause of action *as long as no vested right is disturbed.*

11. See generally McGovern, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am.U.L.Rev. 579 [1981] and Developments in the Law, Statutes of Limitations, 63 Harv.L.Rev. 1177 [1950].

12. *Kenyon v. Hammer, infra* note 20 at 967 and *Garrett v. Raytheon Co., Inc.,* 368 So.2d 516, 521 [Ala.1979].

13. *Bernath v. LeFever,* 325 Pa. 43, 189 A. 342, 343 [1937].

14. *Catz v. Rubenstein,* 201 Conn. 39, 513 A.2d 98, 101–103 [1986].

contemporaneously with the negligent act.[15] Yet, the act and the resulting injury are distinct and separate. The legislature could have used the term "negligent act" rather than "injury", but it did not. In the absence of specific statutory definition, we must assume that the law-making body intended a common word to be interpreted in its ordinary and usual parlance.[16] The presumption to be followed is that the legislature expressed its intent and that it intended what it expressed.[17] Both Webster and Black define injury as "damage done to another."[18] In its usual and ordinary meaning then the statutory time begins to run when damage or harm occurs as a result of a negligent act.[19] At that point a cause of action arises in favor of one who was harmed regardless of whether one knows of the injury or is unaware of its occurrence. Construed in this manner, the three-year restriction serves as an outer limit on the discovery rule for the recovery of certain types of damages and will never act to destroy a cause of action before it arises.

In *Kenyon v. Hammer*[20] the Supreme Court of Arizona construed similar legislative language in that state's statute of limitations. The Arizona statute barred *all* medical malpractice actions brought more than three years from the date of the injury. The court held that the "date of the injury" was the date the plaintiff suffered the actual injury and not the date of the negligent act.

In *Hammer*, the negligent act was a nurse's mistake in recording plaintiff's blood type as RH positive instead of RH negative. The court held that for limitation purposes the plaintiff's bodily injury occurred seventy-two hours after the delivery of plaintiff's RH positive child—several months after the negligent act. At that time plaintiff developed an immune response which affected her ability to bear additional children. A drug which suppresses such a response was not administered because of the incorrect information on plaintiff's chart. The court specifically refused to interpret the statute as a statute of repose running from the negligent act. It held that the proviso was a statute of limitation without the benefit of a discovery rule.[21]

*The text of § 18 neither impliedly nor expressly abolishes any claims or causes of action before they can arise. Rather, the section limits recovery for a class of actionable medical malpractice claims whose commencement is delayed by want of discovery within three years of the injury.* We hold that Oklahoma's three-year restriction is hence a statute of limitation without the benefit of a discovery rule. It began to run when the plaintiff suffered actual harm. Her right to bring an action arose at that time even though she was then unaware of the harm she suffered. The plaintiff's remedy is limited to the recovery of actual medical and surgical expenses because she failed to bring her action within three years of the harmful event.

## II
## THE THREE–YEAR PROVISO IS A SPECIAL STATUTE OF LIMITATION PROSCRIBED BY ART. 5, § 46 OF THE OKLAHOMA CONSTITUTION

■ We now consider whether the three-year restriction is a special statute of limi-

---

**15.** In product liability cases, on the other hand, the injury rarely occurs at the same time as the negligent act or omission.

**16.** *Riffe Petroleum Co. v. Great Nat. Corp., Inc.,* Okl., 614 P.2d 576, 579 [1980].

**17.** *Rath v. LaFon,* Okl., 431 P.2d 312, 314 [1967].

**18.** Black's Law Dictionary [5th ed. 1979] at 706 and Webster's Third New International Dictionary at 1164 [1961].

**19.** This court in a nuisance case construed "injury" as "the result of the nuisance" and not as "the nuisance itself". *Briscoe v. Harper Oil Co.,*

Okl., 702 P.2d 33, 36 [1985]. In *White v. Kitty Clover Company,* Okl., 409 P.2d 637, 639 [1965], this court construed "injury" as "the harm resulting from an accident," not as "the accident itself".

**20.** 142 Ariz. 69, 688 P.2d 961, 966–967 [1984].

**21.** In *Hammer, supra* note 20 688 P.2d at 979, the Arizona Supreme Court concluded that the statute violated the state's equal protection provision. *Kenyon v. Hammer, supra* note 20 688 P.2d at 968.

tation in violation of Art. 5, § 46 of the Oklahoma Constitution. The constitutional mandate is couched in unmistakably imperative terms and provides in pertinent part:

"The Legislature *shall not*, except as otherwise provided in this Constitution, pass any local or special law authorizing:

\*　　\*　　\*　　\*　　\*　　\*

For limitation of civil or criminal actions...." [Emphasis supplied.]

Art. 5, § 59, Okl.Const., further enlightens us on the breadth of the § 46 prohibition against special laws. Its terms provide:

"Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

Section 59 generally *allows* the legislature to pass special laws *when a general law is not applicable.*[22] Under § 59 a three-pronged inquiry is necessary to determine whether a statute is constitutional: 1) Is the statute a special or general law? 2) If the statute is a special law, is a general law applicable? and 3) If a general law is not applicable, is the statute a permissible special law?

■ Under the first prong, we must identify the class. A statute relating to all persons or things of a class is a general law; one relating to particular persons or things of a class is a special law.[23] The number of persons or things upon which the law has a direct effect may be very few, but it must operate uniformly upon all brought within the class by common circumstances.[24] Special laws are those which single out less than an entire class of similarly affected persons or things for different treatment.

■ Under the second prong, we must determine if the subject of the legislation is reasonably susceptible of general treatment or if, on the other hand, there is a special situation possessing characteristics impossible of treatment by general law. Here the court will consider both the nature and objective of the legislation as well as the conditions and circumstances under which the statute was enacted.[25]

■ Under the third prong, the court must determine if the special legislation is reasonably and substantially related to a valid legislative objective.[26] If it is, the Constitution permits the legislature to pass the special law to promote its objective. The confusion found in the case law has arisen because courts, upon finding that a special law is reasonably and substantially related to a valid legislative objective, have declared the statute permissible as general law, instead of saying the statute, though special, is nonetheless one that is permissible.[27] The third prong of the required inquiry under § 59 is confused with the first prong. The effect is that courts have failed to distinguish the analysis appropriate under § 59 from that which is proper under § 46. The confusion encountered in the case law is greatly enhanced when the courts consider attacks launched under §§ 46 and 59 as a single challenge without noting the significant differences in the two constitutional provisions.[28]

Under § 46 our constitutional review of a statute stops with the first prong: Is the statute a special or general law? If the statute is special, § 46 absolutely and unequivocally prohibits its passage by the

---

**22.** The legislature must, of course, comply with publication requirements prescribed by Art. 5, § 32, Okl. Const.

**23.** *Jack v. State*, 183 Okl. 375, 82 P.2d 1033, 1035 [1938] and *Guthrie Daily Leader v. Cameron*, 3 Okl. 677, 41 P. 635, 639 [1895].

**24.** *Grable v. Childers*, 176 Okl. 360, 56 P.2d 357 [1936] (syllabus 1).

**25.** See *Jack v. State, supra* note 23 82 P.2d at 1036; *State v. Hodgson*, 183 Kan. 272, 326 P.2d 752, 758 [1958] and *State Board of Regents v. Lindquist*, 188 N.W.2d 320, 324 [Iowa 1971].

**26.** *Black v. Ball Janitorial Service, Inc., supra* note 4 at p. 514.

**27.** *Oklahoma City v. Excise Board of Oklahoma County*, 193 Okl. 189, 141 P.2d 805, 808–809 [1943] and *Wilkinson v. Hale*, 184 Okl. 165, 86 P.2d 305, 307 [1939].

**28.** See *Elias v. City of Tulsa*, Okl., 408 P.2d 517, 520 [1965].

legislature.[29] The second prong is unnecessary because the constitutional fathers predetermined that, for the 28 subjects enumerated in § 46, a general law is *always* applicable.[30] In other words, in § 46 our constitutional fathers isolated and set aside for protection against legislative tampering subjects to which general law *must* always be tailored. The third prong is not implicated because a special statute under § 46 is *never* permissible. *In a § 46 attack, the only issue to be resolved is whether a statute upon a subject enumerated in that section targets for different treatment less than an entire class of similarly situated persons or things.*

 The § 46 subject dealt with in the three-year restriction under inquiry here is *the limitation of a civil action.* In determining whether the statute operates on an entire class of actionable claims that are similarly situated, we identify the class by reference to the general legislative scheme of limitations patterned after the English legal tradition that includes the common-law gloss. The common-law class implicated by the three-year provision in § 18 comprises all actionable tort claims tollable by the discovery rule. Actionable tort claims favorably affected by Oklahoma's discovery rule include *not only medical malpractice claims,[31] but also claims involving pollution of a stream,[32] claims involving damage to realty,[33] and claims involving negligent exposure to an infectious disease with latent symptoms.[34]* The legislature's enactment of the three-year provision carved out of that single common-law class a subclass of actionable medical malpractice claims which cannot be discovered with reasonable diligence until after three years. The latter claims are to be accorded "special" treatment in that they are subjected to a limit on recoverable damages.[35] No other negligent tort claim benefitting from our common-law discovery rule is affected. The three-year provision plainly offends § 46. It is fraught with the vice of underinclusiveness because its sweep embraces less than an all-inclusive common-law class.[36]

The manifest intent of our Constitution's framers was that all persons under the same conditions and in the same circumstances be treated alike and that the legislature be prohibited from tampering with limitations by fashioning special acts. The vice of special acts is that they create preferences and establish inequality.[37] In *City of Tulsa v. Macura* [38] this court held that a

---

**29.** *Maule v. Independent School Dist. No. 9, infra* note 39 at 204; *City of Tulsa v. McIntosh, supra* note 6 284 P. at 877; *Union School Dist. No. 1 v. Foster Lumber Co.,* 142 Okl. 260, 286 P. 774, 775 [1930] and *Bradford v. Cole,* 95 Okl. 35, 217 P. 470, 472 [1923].

**30.** Art. 5, § 51, Okl. Const., defines another subject area where general law must always be applied: granting to corporations or individuals special or exclusive privileges, immunities or franchise.

**31.** *Seitz v. Jones, supra* note 8 at 302.

**32.** *Continental Oil Co. v. Williams, supra* note 8 250 P.2d at 441; *North v. Evans,* 199 Okl. 284, 185 P.2d 901, 904 [1947] and *Skelly Oil Co. v. Humphrey,* 195 Okl. 384, 158 P.2d 175, 176–177 [1945].

**33.** *Harper–Turner Oil Company v. Bridge,* 311 P.2d 947, 950 [1957]; *Cities Service Gas Co. v. Eggers,* 186 Okl. 466, 98 P.2d 1114, 1118 [1940]; *Commercial Drilling Co. v. Kennedy,* 172 Okl. 475, 45 P.2d 534, 536 [1935] and *Gouin v. Continental Oil Co., supra* note 8 at 707.

**34.** *Sloan v. Canadian Valley Animal Clinic, Inc.,* Okl.App., 719 P.2d 474 [1985].

**35.** Had the abolition of the discovery rule not been limited to a single subclass of actionable tort claims, the § 46 prohibition would not be violated.

**36.** We do not express an opinion as to the proper test to be applied in identifying a class for other subjects enumerated in Art. 5, § 46, Okl. Const. The test we adopt for identifying the class in measuring the validity of a civil action's limitation by the strictures in § 46 is not necessarily applicable to other subjects enumerated in that section.

**37.** *Jack v. State, supra* note 23 at 1035.

**38.** 186 Okl. 674, 100 P.2d 269, 271 [1940]. See also *Sherwood Forest No. 2 Corp. v. City of Norman,* Okl., 632 P.2d 368, 370 [1980] and *City of Tulsa v. McIntosh, supra* note 6 284 P. at 877.

City of Tulsa charter provision requiring that a 30–day written notice be given before a suit could be brought against the City for personal injuries was a "special" statute and hence unconstitutional.

Section 46 also prohibits local or special laws regulating the affairs of school districts. In *Maule v. Independent School Dist. No. 9*[39] we construed a statute outlining procedures for determining a bargaining representative for professional educators in school districts with an average daily attendance of 35,000 or more as also applying to all school districts. Limiting the statute's application to districts with an average daily attendance of 35,000 or more would make the statute a special law in violation of § 46.

The three-year restriction in the medical malpractice statute has no counterpart in the general law of limitations applicable to other claims that benefit from the discovery rule.[40] Because it impacts less than an entire class of similarly situated claimants, it is underinclusive and hence "special". Those who participated in the formation of our Constitution expressed in Art. 5, § 46 a strong fear that those with political power would carve out for themselves special exceptions to our general laws. Section 46 is not just a mirror of equal protection notions[41] but rather an absolute and unequivocal prohibition against applying statutory limitations to less than an entire class of like-situated litigants.

## III
## THE THREE–YEAR PROVISO WOULD ALSO BE AN IMPERMISSIBLE SPECIAL LAW UNDER ART. 5, § 59 OF THE OKLAHOMA CONSTITUTION

 Even if we were to assume the attack launched here were under § 59 and were to gauge the validity of the statute by the reasonableness standard, we could not approve the legislation as reasonably and substantially related to a valid legislative objective. The respondent cites the rapid increase in medical malpractice litigation in Oklahoma and the resulting escalation of malpractice insurance costs as threats to the availability of affordable health care to the Oklahoma public as the basis for the constitutional classification. The respondent favors us with no statistics to support his theory. He cites the reasons other states have assigned as a basis for medical malpractice legislation and speculates that the same reasons might also apply in Oklahoma.

The three-year proviso was enacted in 1976 after an escalation in the cost of medical malpractice insurance had created what was perceived as a nationwide crisis.[42] Legislators across the country responded by enacting various limitations on medical malpractice litigation. Legal writers, courts and legislatures have put forth various reasons for creating special legislation limiting actions for medical malpractice.[43] These include the continued provision of medical care to the public at a reasonable cost, the continued existence of medical care institutions, the continued readiness of

**39.** Okl., 714 P.2d 198, 203–204 [1986].

**40.** See text accompanying *supra* notes 31–34.

**41.** Amicus curiae asserts that the three-year provision acts as a zero cap on certain types of damages and discriminates against the most severely injured victims of medical malpractice. Amicus further asserts that because there is no rational basis for this discrimination, the three-year provision offends the equal protection notions of both the U.S. and Oklahoma Constitutions. The zero cap on damages is effected only after the statute of limitation has run. Because we hold the statute's subclass comprising a few malpractice cases which cannot be discovered in three years is a special act violative of Art. 5,

§ 46, Okl. Const., we save for another day the equal protection argument against caps on medical malpractice claims.

**42.** There is considerable authority questioning the reality of a nationwide medical malpractice crisis. See *Arneson v. Olson*, 270 N.W.2d 125, 136 [N.D.1978]. See also Sepler, Professional Malpractice Litigation Crises: Danger or Distortion?, 15 Forum 493 [1980] and Kindregan and Swartz, The Assault on the Captive Consumer: Emasculating the Common Law of Torts in the Name of Reform, 18 St. Mary's L.J. 673 [1987].

**43.** See *Arneson v. Olson, supra* note 42 and law review articles in note 42 *supra*.

individuals to enter the health care field, the elimination of nonmeritorious claims and the right of health care providers to be free from the burden of defending stale claims. This court recognizes that any or all of these might have been valid legislative objectives which brought about the special classification in the three-year restriction. We now consider whether there is a degree of correlation between the classification and any of these possible objectives.

Considering the right of health care providers to be free from the burden of defending stale claims, we see no correlation between the three-year proviso and this possible objective. Unlike the two-year proviso approved in *McCarroll*, the three-year limit does not absolutely bar the claim. The health care providers must still appear in court to defend their professional actions. They are still required to elicit evidence which will show that their conduct conforms to due care. The three-year limit affects the litigation only when a health care provider's negligence has been established. At that point the time limit acts to shield the negligent health care provider from liability for some of the resulting damage. It does not eliminate the burden of defending a stale claim.

We next consider whether the three-year limit is reasonably and substantially related to the high cost of medical malpractice insurance. There is no legislative declaration supported by documented findings that the narrow class carved out in § 18 is so affected by an excessively high incidence of losses that it calls for special statutory treatment. In short, not even the less restrictive standard of reasonableness under § 59 would save the challenged three-year limit from failing constitutional muster.

## CONCLUSION

Because the critical provision in 76 O.S. 1981 § 18, which limits the scope of recoverable damages after a three-year time lapse, is a special statute of limitation absolutely proscribed by Art. 5, § 46, Okl. Const., we reverse today that part of the trial court's order which found that be-

cause the action was brought more than three years from the date of injury, the plaintiff's recovery must be limited to actual medical and surgical expenses incurred or to be incurred.

HARGRAVE, V.C.J., HODGES, KAUGER and SUMMERS, JJ., and MEANS, S.J. (who sat by designation in lieu of DOOLIN, C.J., upon the latter's disqualification), concur.

LAVENDER, SIMMS and ALMA WILSON, JJ., concur in result.