Dear Senator Brecheen:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does Section 46 of Article V of the Oklahoma Constitution, which prohibits enactment of local or special laws on certain subjects, prevent the State of Oklahoma from setting by law the per diem rate to be paid to counties to defray the cost of the incarceration of state or federal[1] prisoners retained in a county jail?
 2. Does Section 23b of Article X of the Oklahoma Constitution, which authorizes the State to contract with counties for the incarceration of State prisoners, prevent the State of Oklahoma from setting by law the per diem rate to be paid to county jails for the incarceration of state inmates retained in a county jail without first entering into a contract with the county to do so?
 3. Are Oklahoma counties required to accept payment from the Department of Corrections at the rate set out in Section 38 of Title 57 of the laws of Oklahoma?
 ARTICLE V, SECTION 46 OF THE OKLAHOMA CONSTITUTION
You first ask whether Section 46 of Article V of the Oklahoma Constitution prevents the State of Oklahoma from setting by law the per diem rate to be paid to counties to defray the cost of the incarceration of state inmates retained in a county jail. *Page 2 
Section 46 of Article V of the Oklahoma Constitution provides in pertinent part that "[t]he Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: . . . Regulati[on of] the affairs of counties, cities, towns, wards, or school districts[.]" Id.
The limitations set out in Section 46 of Article V of the Oklahoma Constitution apply only if a law passed by the Oklahoma Legislature is a "local or special law." Id. Thus, your first question requires an initial determination of whether Sections 37 and 38 of Title 57 are "general laws" or "local or special laws." See Reynolds v. Porter,760 P.2d 816, 822-23 (Okla. 1988).
Section 59 of Article V of the Oklahoma Constitution provides that "[l]aws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." OKLA. CONST. art. V, § 59.
Section 37 of Title 57 of the laws of Oklahoma provides in pertinent part:
 B. No inmate may be received by a penal facility from a county jail without first scheduling a transfer with the Department. The sheriff or court clerk shall transmit by facsimile, electronic mail, or actual delivery a certified copy of the judgment and sentence certifying that the inmate is sentenced to the Department of Corrections. The receipt of the certified copy of the judgment and sentence shall be certification that the sentencing court has entered a judgment and sentence and all other necessary commitment documents. The Department of Corrections is authorized to determine the appropriate method of delivery from each county based on electronic or other capabilities. Once the judgment and sentence is received by the Department of Corrections, the Department shall contact the sheriff when bed space is available to schedule the transfer and reception of the inmate into the Department.
 C. When a county jail has reached its capacity of inmates as defined in Section 192 of Title 74 of the Oklahoma Statutes, then the county sheriff shall notify the Director of the Oklahoma Department of Corrections, or the Director's designated representative, by facsimile, electronic mail, or actual delivery, that the county jail has reached or exceeded its capacity to hold inmates. The notification shall include copies of any judgment and sentences not previously delivered as required by subsection B of this section. Then within seventy-two (72) hours following such notification, the county sheriff shall transport the designated excess inmate or inmates to a penal facility designated by the Department. The sheriff shall notify the Department of the transport of the inmate prior to the reception of the inmate. The Department shall schedule the reception date and receive the inmate within seventy-two (72) hours of notification that the county jail is at capacity, unless other arrangements can be made with the sheriff.
 D. Once the judgment and sentence is transmitted to the Department of *Page 3 Corrections, the Department will be responsible for the cost of housing the inmate in the county jail from the date the sentence was ordered by the court until the date of transfer of the inmate from the county jail. The cost of housing shall be the per diem rate specified in Section 38 of this title. In the event the inmate has other criminal charges pending in another Oklahoma jurisdiction the Department shall be responsible for the housing costs while the inmate remains in the county jail awaiting transfer to another jurisdiction. Once the inmate is transferred to another jurisdiction, the Department is not responsible for the housing cost of the inmate until such time that another judgment and sentence is received from another Oklahoma jurisdiction. The sheriff shall be reimbursed by the Department for the cost of housing the inmate in one of two ways:
 1. The sheriff may submit invoices for the cost of housing the inmate on a monthly basis; or
 2. The sheriff may submit one invoice for the total amount due for the inmate after the Department has received the inmate.
Id. (emphasis added).
Section 38 of Title 57 of the laws of Oklahoma establishes the per diem rate to be paid counties for housing state inmates, providing in pertinent part:
 Effective January 1, 2007, the Department of Corrections shall reimburse any county, which is required to retain an inmate pursuant to paragraph 2 of Section 37 of this title, in an amount not to exceed Twenty-seven Dollars ($27.00) per day for each inmate during such period of retention. The proceeds of this reimbursement shall be used to defray expenses of equipping and maintaining the jail and payment of personnel.
Id.
"When applied to legislation, [the word `local'] signifies such legislation as relates to only a portion of the territory or state, or a part of its people, or to a fraction of the property of its citizens." Territory ex rel. Taylor v. Sch. Dist. No. 83,64 P. 241, 241 (syllabus ¶ 1) (Okla. 1901). Sections 37 and 38 of Title 57 apply to all counties and sheriffs within the State of Oklahoma, therefore, the subject statutes are not local laws.
"A general law `relates to persons or things as a class rather than relating to particular persons or things.'" City ofEnid v. Pub. Employee Relations Bd.,133 P.3d 281, 286 (Okla. 2006) (quoting Grant v. GoodyearTire Rubber Co., 5 P.3d 594, at 597 (Okla. 2000), citing Reynolds v. Porter, 760 P.2d 816, at 822 (Okla. 1988)). "A statute is a special law where a part of the entire class of *Page 4 
similarly affected persons is separated for different treatment."Grant,5 P.3d at 597 (citing Reynolds, 760 P.2d at 822). "The number of persons or things upon which the law has a direct effect may be very few, but it must operate uniformly upon all brought within the class by common circumstances." Reynolds, 760 P.2d at 822. "Art. 5 § 46 mandates in absolute terms statewide procedural uniformity for an entire class of similarly situated persons or things as well as uniformity for regulating affairs of counties."State ex rel. Macy v. Bd. of County Comm'rs,986 P.2d 1130, 1138 (Okla. 1999). Section 37 of Title 57 sets out the procedure for the Department of Corrections, counties and sheriffs to follow to accomplish the transfer of inmates to the Department of Corrections. The class in this instance is made up of all the counties and sheriffs within Oklahoma. Section 38 of Title 57 sets out the per diem rate to be paid to counties by the Department of Corrections to defray the cost of the county retaining a state inmate in county facilities until the Department of Corrections informs the county that space is available at the state penal facility as provided in Section 37 of the same title. Again, the class is made up of all the counties and sheriffs within the State of Oklahoma. Individual counties and sheriffs of the State of Oklahoma are not set out for different treatment from other counties and sheriffs in either Section 37 or Section 38. No specific county is named.See Sparks v. Bd. of Library Tr.,169 P.2d 201, 203 (Okla. 1946). The requirements and procedures set out in the statutes apply uniformly to all counties and sheriffs, therefore, the subject statutes are general laws and not special laws. It follows that the limitations provided in Section 46 of Article V of the Oklahoma Constitution do not apply to Sections 37 and 38 of Title 57, because the laws are not local laws or special laws as is required by that constitutional provision as a prerequisite for its application. With regard to this constitutional provision, further analysis is not necessary, because "a general law is always applicable." Reynolds,760 P.2d at 823.
 ARTICLE X, SECTION 9, ARTICLE X, SECTION 23b, and ARTICLE XXI, SECTION 1 OF THE OKLAHOMA CONSTITUTION
You next ask whether Section 23b of Article X of the Oklahoma Constitution prevents the State of Oklahoma from setting, by law, the per diem rate to be paid to county jails for the incarceration of state inmates retained in a county jail without first entering into a contract with the county to do so. We will answer this question in two parts. First, we will answer the question through an analysis of the word "authorized" as used in subsection A of Section 23b of Article X and a plain reading of it. Then we will answer whether there are other constitutional provisions that are implicated.
A. Contracting is authorized but not required.
Section 23b of Article X of the Oklahoma Constitution provides in pertinent part as follows:
 A. The state is hereby authorized to enter into contracts for the incarceration of state prisoners with counties, municipalities, or any combination thereof authorized by law. The term of such contract shall not exceed fifteen (15) years.
Id. *Page 5 
The rules of statutory construction require that we assume that subsection A of Section 23b expressed the intent of the drafters and the voters of this State when it was approved by the people as an amendment to the Oklahoma Constitution, and that the wording of the provision was intended as expressed. See Darnell v.Chrysler Corp., 687 P.2d 132, 134 (Okla. 1984). "[G]enerally we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but rather, to see if the act is prohibited." State ex rel. Edmondson v. Okla. Corp. Comm'n,971 P.2d 868, 872 (Okla. 1998). "Matters not covered by the constitutional language will be construed to be within the power of the legislature." Id.
While the constitutional provision authorizes the State to enter into contracts with counties and municipalities for the incarceration of state prisoners, it does not require that the State of Oklahoma do so; it does not set out the form a contract should take, and does not set out the amount to be paid to a county by the State of Oklahoma under a contract. While authorizing the State of Oklahoma to enter into a contract, this provision does not prevent or limit the Legislature from doing it in other ways, including the enactment of laws setting out the amount to be paid to counties for retaining state inmates. Therefore, the Legislature exercised proper authority under subsection A of Section 23b of Article X of the Oklahoma Constitution when it passed Section 38 of Title 57, setting the per diem rate to be paid to counties for housing state prisoners in county facilities until space is available in state facilities. However, as explained below, this conclusion does not mean that the application of such a per diem statute will in all instances be constitutional.
B. State institutions must be supported by the State; advalorem tax revenues must not be used for a State purpose.
This leads to the second part of the answer to this question, which is whether other provisions of the Oklahoma Constitution that are implicated.
Section 1 of Article XXI of the Oklahoma Constitution provides as follows:
 Educational, reformatory, and penal institutions and those for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require, shall be established and supported by the State in such manner as may be prescribed by law.
Id. (emphasis added).
In 1981, the Oklahoma Supreme Court recognized that Section 1 of Article XXI is violated when the Legislature either directly or indirectly requires or permits county ad valorem revenue to be used to support a state institution. State ex rel. Dep't of HumanServ. v. Malibie, 630 P.2d 310, 315 (Okla. 1981). In that case the Court considered the Department of Human Services petition for a writ of mandamus, directing County Commissioners and County Excise Boards to comply with laws that required counties to appropriate a portion of the assessed valuation of the respective counties to be used by county commissioners for the care of crippled children.Id. at 311. In denying the writ, the *Page 6 
Court held that "legislation can violate the provisions of Article 21, Section 1, of the Oklahoma Constitution, if it either directly or indirectly permits or requires that the county ad valorem revenues be used to support or maintain State institutions."Id. at 315. The Court further held that "[u]nder the statutory scheme county funds may be used to support State institutions, thus, the statute violates the provisions of Article 21, Section 1, which require that State funds, not county funds, be expended to support and maintain state institutions." Id. at 317. The Court further held, "[E]ven if no ad valorem taxes were directly used to support State institutions, and assuming such were required by the statute, the statute would still violate Article 21, Section 1, as the statute establishes a method for indirectly supporting State institutions." Id.
Furthermore, Malibie held that "[the Crippled Children's Act] may violate the provisions of Article X, Section 9, of the Oklahoma Constitution, if it directly or indirectly requires county ad valorem tax revenues to be used for a State purpose."Id. at 315.
Section 9 of Article X of the Oklahoma Constitution provides in pertinent part: "No ad valorem tax shall be levied for Statepurposes, nor shall any part of the proceeds ofany ad valorem tax levy upon any kind of property in this Statebe used for State purposes." OKLA. CONST. art. X, § 9(a) (emphasis added).
"Whether Article 10, Section 9, is being violated depends upon whether county funds are being spent for a State, rather than a county, purpose." Malibie, 630 P.2d at 316. After an analysis of the laws relating to the powers and duties of the Department of Human Services and determining that the program is controlled by that Department, the Court held as follows:
 The Crippled Children's Act, . . . is a State program, controlled and administered by a Department of the State and State officers. Accordingly, we hold that the provisions of the Act which require that county ad valorem tax revenues be appropriated to fund the program constitute an appropriation of county ad valorem revenues for a State purpose, and thus, such provisions violate Article 10, Section 9, of the Oklahoma Constitution,. . . .
Id. at 317.
The Oklahoma Supreme Court held in Malibie that the use, directly or indirectly, of county funds to support a state institution violates Section 1 of Article XXI of the Oklahoma Constitution. See Id. at 315.
Thus, if the State does not provide to counties an amount of dollars sufficient to fully defray the costs of housing retained state inmates in county jails, the counties are forced to use county resources to make up the difference, and in so doing, the county is supporting state institutions — state penal institutions — in violation of Section 1 of Article XXI of the Oklahoma Constitution. *Page 7 Malibie further held that laws may violate Section 9 of Article X of the Oklahoma Constitution if the laws directly or indirectly require county ad valorem tax revenues to be used for a state purpose. Malibie, 630 P.2d at 315.
The retention of state inmates in county jails until space is available in a state penal institution serves an obvious State purpose. If the State does not provide to counties an amount of dollars sufficient to fully defray the costs of housing retained state inmates in county jails and the counties are forced to use ad valorem tax revenue to house these state inmates, then Section 9 of Article X of the Oklahoma Constitution is violated.
Section 38 of Title 57 sets the per diem rate at an amount not to exceed twenty-seven dollars ($27.00) to be paid to counties by the Department of Corrections to defray the cost to the county of retaining an inmate in county facilities until the Department of Corrections informs the county that space is available at the state penal facility as provided in Section 37 of the same title.Id.
Therefore, the answer to your second question is that the Legislature exercised proper authority under Article X, Section 23b
of the Oklahoma Constitution when it passed Section 38 of Title 57 setting the per diem rate at an amount not to exceed twenty-seven dollars ($27.00) to be paid to counties for retaining state inmates in county facilities until space is available in state facilities, unless that dollar amount resultsin support of a State institution by a county in violationof Section 1 of Article XXI of the Oklahoma Constitution or resultsin the use of ad valorem tax revenues in violationof Section 9, of Article X of the Oklahoma Constitution, due to thefact that the dollar amount does not defray the full cost tocounties of housing state inmates who were retained in county jailfacilities after sentencing. The questions whether a dollar amount is sufficient to defray the full cost to a specific county and whether county ad valorem tax revenue was used by a specific county constitute questions of fact and are beyond the scope of an Attorney General Opinion. 74 O.S.Supp. 2010, § 18b[74-18b](A)(5).
 SECTION 38 OF TITLE 57 OF THE LAWS OF OKLAHOMA
You last ask whether Oklahoma counties are required to accept payment from the Department of Corrections at the rate set out in Section 38 of Title 57 of the laws of Oklahoma.
As stated above, the limitations provided in Section 46 of Article V of the Oklahoma Constitution do not apply to Sections 37 and 38 of Title 57, because these two laws are not local laws or special laws as is required by that constitutional provision as a prerequisite for its application. Furthermore, Section 37 of Title 57 provides that "[t]he cost of housing [state inmates in county jails] shall be the per diem rate specified in Section 38 of [Title 57]."Id. § 37(D). Section 38 provides in pertinent part that "the Department of Corrections shall reimburse any county, which is required to retain an inmate pursuant to paragraph 2 of Section 37 of [Title 57], in an amount not to exceed Twenty-seven Dollars ($27.00) per day for each inmate during such period of retention." Id. A plain reading of Sections 37 and 38 of Title 57 reveals that the Department of Corrections must bear the expense of housing retained state inmates in county jails, but at the per diem rate specified in Section 38 of Title *Page 8 
57. When paying counties to defray the expense of retaining state inmates in county facilities pursuant to Section 37 of Title 57, the Department of Corrections must pay to counties an amount not exceeding a per diem of twenty-seven dollars ($27.00), unlessthat per diem amount is not sufficient to fully reimburse a county'scost of housing a prisoner. In such instances, the requirement in Section 1 of Article XXI of the Oklahoma Constitution that the state support penal institutions would require the State to fully reimburse the county. In addition, the requirement in Section 9 of Article X of the Oklahoma Constitution that ad valorem tax revenue not be used to fund programs created to accomplish a state purpose would require the State to fully reimburse the county if ad valorem tax revenues were in fact used to make up a shortfall in the amount of funds necessary to defray the cost of housing the state inmates. As stated above, the questions of whether a dollar amount is sufficient to defray the full cost to a specific county and whether county ad valorem tax revenue was used by a specific county constitute questions of fact, and are beyond the scope of an Attorney General Opinion. 74 O.S.Supp. 2010, § 18b[74-18b](A)(5).
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The limitations provided in Section 46 of Article V of the Oklahoma Constitution do not apply to Sections 37 and 38 of Title 57 of the laws of Oklahoma, because those limitations only apply to local or special laws, and neither Section 37 nor Section 38 are local or special laws.
 2. The Legislature exercised proper authority under the Oklahoma Constitution when it passed Section 38 of Title 57 setting the per diem rate at an amount not to exceed twenty-seven dollars ($27.00) to be paid to counties for retaining state inmates in county facilities until space is available in state facilities, unless that dollar amount results in a violation of Article XXI, Section 1 of the Oklahoma Constitution or results in the use of ad valorem tax revenues in violation of Article X, Section 9 of the Oklahoma Constitution, due to the fact that the dollar amount does not defray the full cost to counties of housing state inmates who were retained in county jail facilities after sentencing. State ex rel. Dep't of Human Serv. v. Malibie, 630 P.2d 310 passim (Okla. 1981).
 3. When paying counties to defray the expense of retaining state inmates in county facilities pursuant to Section 37 of Title 57, the Department of Corrections must pay to counties an amount not exceeding a per diem of twenty-seven dollars ($27.00), unless that per diem amount is not sufficient to fully reimburse a county's cost of housing a prisoner. In such instances, the requirement in Section 1 of Article XXI of the Oklahoma Constitution that the state support penal institutions would require the state to fully reimburse the county. 57 O.S.Supp. 2010, § 38[57-38]; OKLA. CONST. art. XXI, § 1. In addition, the requirement in Article X, Section 9 of the Oklahoma Constitution that ad valorem tax revenues not *Page 9 be used to fund programs created to accomplish a State purpose would require the state to fully reimburse the county so long as county ad valorem tax revenues were in fact used to make up a shortfall in the amount of funds necessary to defray the cost of housing the state inmates. 57 O.S.Supp. 2010, § 38[57-38]; OKLA. CONST. art. XXI, § 1; OKLA. CONST. art. X, § 9(a).
 4. Whether the per diem rate in 57 O.S.Supp. 2010, § 38[57-38] is sufficient to defray the full costs to a specific county, and whether a specific county used ad valorem tax revenue to cover the costs of housing state inmates in county jails constitute questions of fact, and are beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18(b)(A)(5).
E. SCOTT PRUITT OKLAHOMA ATTORNEY GENERAL
KARL F. KRAMER ASSISTANT ATTORNEY GENERAL
[1] This analysis does not address federal prisoners, because the Oklahoma Constitution and statutes do not apply to federal prisoners. *Page 1