REIF, J.
*1109 ¶ 1 At issue is the constitutionality of a legislative enactment- 23 O.S. 2011 § 61.2 -that statutorily limits a plaintiff's recovery of noneconomic damages to $350,000 unless special findings are made. In this case, the trial court significantly reduced the jury's award based on its application of 23 O.S. 2011 § 61.2(B)-(F). We conclude that the challenged statutory provision-the cap on actual noneconomic damages-is wrought with an irremediable constitutional infirmity: It is a special law categorically prohibited by Article 5, Section 46 of the Oklahoma Constitution. We hold that 23 O.S. 2011 § 61.2(B)-(F) is unconstitutional in its entirety, and we reverse the trial court's judgment to the extent it modified-and reduced-the jury's verdict in favor of the plaintiffs.
I.
¶ 2 The facts underlying this controversy may be briefly stated. A boom from a crane fell and hit Todd Beason. The crane was operated by an employee of the defendant, I. E. Miller Services, Inc. The employee was attempting to move an 82,000-pound mud pump without the assistance of another crane or vehicle. As a result of his injury, Beason underwent two amputations on parts of his arm.
¶ 3 Beason and his wife, Dara Beason, brought an action against the defendant. The matter went to trial in Oklahoma County. The jury awarded $14,000,000 to Todd Beason and $1,000,000 to Dara Beason. The jurors then signed a "supplemental verdict form" allocating $5,000,000 of the $14,000,000 awarded to Todd Beason as actual noneconomic damages. The trial judge determined that all of Dara Beason's damages were noneconomic in nature.
¶ 4 The full text of 23 O.S. 2011 § 61.2 provides:
A. In any civil action arising from a claimed bodily injury, the amount of compensation which the trier of fact may award a plaintiff for economic loss shall not be subject to any limitation.
B. Except as provided in subsection C of this section, in any civil action arising from a claimed bodily injury, the amount of compensation which a trier of fact may award a plaintiff for noneconomic loss shall not exceed Three Hundred Fifty Thousand Dollars ($350,000.00), regardless of the number of parties against whom the action is brought or the number of actions brought.
C. Notwithstanding subsection B of this section, there shall be no limit on the amount of noneconomic damages which the trier of fact may award the plaintiff in a civil action arising from a claimed bodily injury resulting from negligence if the judge and jury finds, by clear and convincing evidence, that the defendant's acts or failures to act were:
1. In reckless disregard for the rights of others;
2. Grossly negligent;
3. Fraudulent; or
4. Intentional or with malice.
D. In the trial of a civil action arising from claimed bodily injury, if the verdict is for the plaintiff, the court, in a nonjury trial, shall make findings of fact, and the jury, in a trial by jury, shall return a general verdict accompanied by answers to *1110 interrogatories, which shall specify all of the following:
1. The total compensatory damages recoverable by the plaintiff;
2. That portion of the total compensatory damages representing the plaintiff's economic loss;
3. That portion of the total compensatory damages representing the plaintiff's noneconomic loss; and
4. If alleged, whether the conduct of the defendant was or amounted to:
a. reckless disregard for the rights of others,
b. gross negligence,
c. fraud, or
d. intentional or malicious conduct.
E. In any civil action to recover damages arising from claimed bodily injury, after the trier of fact makes the findings required by subsection D of this section, the court shall enter judgment in favor of the plaintiff for economic damages in the amount determined pursuant to paragraph 2 of subsection D of this section, and subject to paragraph 4 of subsection D of this section, the court shall enter a judgment in favor of the plaintiff for noneconomic damages. Except as provided in subsection C of this section, in no event shall a judgment for noneconomic damages exceed the maximum recoverable amounts set forth in subsection B of this section. Subsection B of this section shall be applied in a jury trial only after the trier of fact has made its factual findings and determinations as to the amount of the plaintiff's damages.
F. In any civil action arising from claimed bodily injury which is tried to a jury, the jury shall not be instructed with respect to the limit on noneconomic damages set forth in subsection B of this section, nor shall counsel for any party nor any witness inform the jury or potential jurors of such limitations.
G. This section shall not apply to actions brought under The Governmental Tort Claims Act or actions for wrongful death.
H. As used in this section:
1. "Bodily injury" means actual physical injury to the body of a person and sickness or disease resulting therefrom;
2. "Economic damages" means any type of pecuniary harm including, but not limited to:
a. all wages, salaries or other compensation lost as a result of a bodily injury that is the subject of a civil action,
b. all costs incurred for medical care or treatment, rehabilitation services, or other care, treatment, services, products or accommodations as a result of a bodily injury that is the subject of a civil action, or
c. any other costs incurred as a result of a bodily injury that is the subject of a civil action;
3. "Fraudulent" or "fraud" means "actual fraud" as defined pursuant to Section 58 of Title 15 of the Oklahoma Statutes ;
4. "Gross negligence" means the want of slight care and diligence;
5. "Malice" involves hatred, spite or ill will, or the doing of a wrongful act intentionally without just cause or excuse;
6. "Noneconomic damages" means nonpecuniary harm that arises from a bodily injury that is the subject of a civil action, including damages for pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, disfigurement, mental anguish and any other intangible loss; and
7. "Reckless disregard of another's rights" shall have the same meaning as willful and wanton conduct and shall mean that the defendant was either aware, or did not care, that there was a substantial and unnecessary risk that his, her or its conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances and there must have been a high probability that the conduct would cause serious harm to another person.
*1111 I. This section shall apply to civil actions filed on or after November 1, 2011.
Applying the provisions of 23 O.S. 2011 § 61.2(B)-(F), the district court reduced the verdict to $9,700,000. That is, the jury's total award of $6,000,000 in noneconomic damages to the Beasons was lowered to $700,000 (or $350,000 per person) in accordance with the statute's cap on damages.
¶ 5 The Beasons filed a motion to conform the judgment to the jury's verdict and the evidence, and reiterated their pretrial argument that 23 O.S. 2011 § 61.2 was unconstitutional. The trial court denied the Beasons' motion, rejecting their constitutional challenge to the statute. The Beasons timely appealed the judgment, arguing that 23 O.S. 2011 § 61.2 is unconstitutional because-in the main-the statute is a special law in violation of Article 5, Section 46 of the Oklahoma Constitution.[1] The defendant also brought a counter-appeal from the judgment, asserting various trial errors. We retained the appeal.
II.
A.
¶ 6 Article 5, Section 46 of the Oklahoma Constitution provides that the Legislature shall not pass special laws affecting certain subjects. It enacts a "mandatory prohibition against special laws." Zeier v. Zimmer, Inc. , 2006 OK 98, ¶ 7, 152 P.3d 861, 865. A statute is a special law when part of an entire class of similarly affected persons is segregated and targeted for different treatment. Reynolds v. Porter , 1988 OK 88, ¶ 14, 760 P.2d 816, 822. To be sure, "the Legislature has a wide latitude to create statutory classifications, but they must be reasonable." Ponca Iron & Metal, Inc. v. Wilkinson , 2010 OK 75, ¶ 6, 242 P.3d 534, 536 ; see also Loyal Order of Moose, Lodge 1785 v. Cavaness , 1977 OK 70, ¶ 16, 563 P.2d 143, 147 (statutory classifications must "above all be reasonable"). "The Legislature runs afoul of the prohibition on enacting special laws set forth in Oklahoma Const. Art. 5 § 46 when it adopts a classification that is arbitrary and capricious and bears no reasonable relationship to the object of the Legislation." Ponca Iron & Metal , 2010 OK 75, ¶ 6, 242 P.3d at 536. Stated another way, Article 5, Section 46 requires uniformity of treatment when like-situated litigants arrive at the courthouse door: "[C]ourt procedure [must] be symmetrical and apply equally across the board for an entire class of similarly situated persons or things." Zeier , 2006 OK 98, ¶ 13, 152 P.3d at 868 ; see also State ex rel. Macy v. Bd. of Cty. Comm'rs of Cty. of Oklahoma , 1999 OK 53, ¶ 14, 986 P.2d 1130, 1138 ; Tate v. Browning-Ferris, Inc. , 1992 OK 72, ¶ 18, 833 P.2d 1218, 1229-30.
¶ 7 Here, the statutory cap on noneconomic damages resulting from bodily injury-contained in 23 O.S. 2011 § 61.2(B)-(F) -is the type of special law that is forbidden by Article 5, Section 46 of the Oklahoma Constitution. It is a special law because it targets for different treatment less than the entire class of similarly situated persons who sue to recover for bodily injury.[2] Ponca Iron & Metal , 2010 OK 75, ¶ 6, 242 P.3d at 536 ; see also Zeier , 2006 OK 98, ¶ 13, 152 P.3d at 867 ("In a special laws attack under art. 5, § 46, the only issue to be resolved is whether a statute upon a subject enumerated in the constitutional provision targets for different treatment less than an entire class of similarly situated persons or things."). "The shortcoming of a special law is that it does not embrace all the classes that it should naturally embrace ...." Wall v. Marouk , 2013 OK 36, ¶ 5, 302 P.3d 775, 779. The failing of the statute is that it purports to limit recovery for pain and suffering in cases where the plaintiff survives the injury-causing event, *1112 while persons who die from the injury-causing event face no such limitation. See Okla. Const. art. 23, § 7 ("The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation ....").
¶ 8 But these two categories are not just similarly situated: They stand on identical footing with respect to recovery. The personal representative of a person who dies from the injury-causing event can maintain an action to the same extent as if the deceased "might have maintained an action, had he or she lived." 12 O.S. 2011 § 1053(A). Such recovery includes "mental pain and anguish" suffered by the decedent. Id. § 1053(B). As noted, the people of Oklahoma have expressly forbidden "any statutory limitation" on the amount recoverable for damages for injuries resulting in death. Okla. Const. art. 23, § 7. If a decedent can recover without limitation for pain and suffering during the time between the harm-causing event and his or her death, no good reason exists to treat a person who survives the harm-causing event differently with respect to recovery for the very same detriment.
¶ 9 The fact that the statutory cap can be lifted, if the injured party can show certain degrees of culpability on the part of the harm-causing agent, does not save the statute from its discriminatory effect. The shared experience of everyday life teaches that a collapsing brick wall can inflict bodily injuries on one person that result in death and bodily injuries on another person that do not result in death, and that the resulting pain and suffering in each case can be substantially the same. Pain and suffering do not vary depending upon the source of the collapse and do not care if the source of the collapse is the result of a tornado, an earthquake, a terrorist act, intentional conduct, negligent design, or strict-liability activity. Culpability or lack of culpability has no bearing whatsoever on the extent of the suffering a victim-deceased or surviving-sustains.
¶ 10 By forbidding limits on recovery for injuries resulting in death, the people have left it to juries to determine the amount of compensation for pain and suffering in such cases, and no good reason exists for the Legislature to provide a different rule for the same detriment simply because the victim survives the harm-causing event. And the people have demonstrated their intent that the Legislature not discriminate in this way by expressly prohibiting the Legislature from enacting special laws. Okla. Const. art. 5, § 46 ; see also Reynolds , 1988 OK 88, ¶ 21, 760 P.2d at 824 ("Those who participated in the formation of our Constitution expressed in Art. 5, § 46 a strong fear that those with political power would carve out for themselves special exceptions to our general laws."). In addition, the people have commanded that "where a general law can be made applicable, no special law shall be enacted." Okla. Const. art 5, § 59. Again, it should be stressed that the pain and suffering for which a personal representative can recover in a wrongful-death suit is the same detriment for which the decedent would have the right to recover had the decedent lived.
¶ 11 Unlike the Legislature (which has imposed a discriminatory cap that favors only one party), the people of Oklahoma have shown a clear preference that damages for personal injury be based on an assessment of evidence by a jury in a proceeding where the interested parties have the equal right to be heard on that issue. This process also has the further protection of judicial review that includes new trial, judgment notwithstanding the verdict, additur, remittitur, and-finally-appeal.
¶ 12 Given the fact that the people have vested the jury with constitutional responsibility to determine the amount of recovery for pain and suffering from an injury resulting in death, this Court must presume a jury would be equally competent to make the same determination in a case where the injury does not result in death. This faith and confidence of the people in the jury system are enshrined within our sacrosanct Bill of Rights, expressed through the command that "[t]he right of trial by jury shall be and remain inviolate." Okla. Const. art. 2, § 19.
¶ 13 "The manifest intent of our Constitution's framers was that all persons under the same conditions and in the same circumstances be treated alike and that the legislature be prohibited from tampering with limitations by fashioning special acts."
*1113 Reynolds , 1988 OK 88, ¶ 19, 760 P.2d at 823. If the people of Oklahoma ever believe the jury system and judicial review are no longer effective to balance the competing interests over compensation in private personal-injury cases, then constitutional amendment-not a special law-is the proper way to provide such change. See Okla. Const. art. 2, § 1 ("All political power is inherent in the people; and government is instituted for their protection, security, and benefit, and to promote their general welfare; and they have the right to alter or reform the same whenever the public good may require it ....").
¶ 14 It is noteworthy that the only power the people have given the Legislature to enact statutory limits on the amount recoverable in civil actions is found in Article 23, Section 7 of our Constitution, and is addressed to "civil actions or claims against the state or any of its political subdivisions." Cases of this nature-as well as cases to compensate for death resulting from work-related injuries-involve public-policy interests, like sovereign immunity and the "Grand Bargain" of the workers' compensation system, that are not present in a private-rights dispute like the case at hand.
¶ 15 In holding that 23 O.S. 2011 § 61.2(B)-(F) is unconstitutional, we take care to emphasize that "[t]his Court does not correct the Legislature, nor do we take upon ourselves the responsibility of legislating by judicial fiat." Zeier , 2006 OK 98, ¶ 31, 152 P.3d at 874. We "recognize[ ] that a statute is the solemn act of the Legislature." Id. ¶ 12, 152 P.3d at 866. But we are required to apply the Oklahoma Constitution with absolute fidelity. And "a special statute under § 46 is never permissible."[3] Reynolds , 1988 OK 88, ¶ 17, 760 P.2d at 823. As the "independent department of government charged with the responsibility of protecting the constitution," we have the solemn yet urgent duty to act when a "statute is clearly, palpably and plainly inconsistent with the constitution"-as here. Zeier , 2006 OK 98, ¶ 12, 152 P.3d at 866-67. We hold that 23 O.S. 2011 § 61.2(B)-(F) violates Article 5, Section 46 of the Oklahoma Constitution.
B.
¶ 16 As a final matter, we turn to the defendant's counter-appeal from the trial court's judgment. The defendant argues that (1) 12 O.S. § 3009.1 applies to both past and future medical expenses; (2) the testimony of two witnesses failed to satisfy the requirements of 12 O.S. § 702, and also that their testimony was prejudicial; (3) evidence on the issue of warranties covering costs for future repair of prosthetics should have been allowed; (4) the jury should have been informed whether personal-injury awards for personal damages are subject to state and federal taxation; (5) the statutory cap on damages codified in 23 O.S. 2011 § 61.2 should have been applied "per lawsuit rather than per plaintiff"; (6) the trial court committed error when refusing to allow the jury to consider the negligence of nonparties; and (7) the trial court committed further error by allowing the defendant's investigation report for the plaintiffs' use without allowing the defendant to explain the basis for the conclusions in the report or admit the report in its entirety.
¶ 17 We find the defendant's seven assignments of error lack merit because (1) 12 O.S. § 3009.1 does not apply to future medical expenses not yet incurred; (2) the asserted errors raised on appeal concerning the testimony of the life-care planner and the plaintiffs' economist do not show abuses of discretion by the trial court; (3) the trial court did not abuse its discretion in failing to instruct the jury on tax liability; (4) the trial *1114 court correctly ruled evidence of warranties for medical devices was not proper; (5) any alleged error concerning a cap on actual noneconomic damages applied on a "per lawsuit" basis was not preserved for appeal; (6) the defendant was not entitled to a "ghost tortfeasor" instruction, and the trial court's ruling on the same was not error; and (7) the trial court did not commit reversible error by allowing the defendant's employee to testify concerning his conclusions found in the investigation report, although the witness used the statements of others in forming some of his conclusions.
¶ 18 We conclude that none of the defendant's assignments of error is sufficient to reverse the judgment of the trial court.
III.
¶ 19 In conclusion, special acts "create preferences and establish inequality." Reynolds , 1988 OK 88, ¶ 19, 760 P.2d at 823. Because that is precisely what the Legislature has done here, we hold that 23 O.S. 2011 § 61.2(B)-(F) is a special law absolutely proscribed by Article 5, Section 46 of the Oklahoma Constitution. Accordingly, we reverse that part of the trial court's judgment modifying the jury's award of noneconomic damages to the plaintiffs. We remand this cause to the district court with directions to enter judgment in the full amount of the jury's verdict.
JUDGMENT OF THE DISTRICT COURT REVERSED IN PART; CAUSE REMANDED WITH DIRECTIONS TO ENTER JUDGMENT ON THE JURY'S VERDICT.
¶ 20 Darby, V.C.J., Colbert and Reif, JJ., and Goodman, S.J. and Walkley, S.J., concur;
¶ 21 Gurich, C.J., concurs in part and dissents in part;
¶ 22 Gurich, C.J., concurring in part and dissenting in part:
I concur in the majority opinion except I conclude that 23 O.S 2011 § 61.2 (B) is constitutional but would sever § 61(E) & (F) as unconstitutional.
¶ 23 Winchester (by separate writing), Edmondson (by separate writing), JJ., and Fischer, S.J., dissent;
¶ 24 Kauger, J., recused;
¶ 25 Combs, J., disqualified.

The Beasons raise several other constitutional challenges on appeal. Having determined that 23 O.S. 2011 § 61.2(B)-(F) is unconstitutional as a special law prohibited by Article 5, Section 46 of the Oklahoma Constitution, we find that addressing their additional constitutional arguments is unnecessary for the disposition of this appeal.

Although the precepts of equal protection may echo in Oklahoma's constitutional injunction against enactment of special laws, the doctrines exist independently of each other. Article 5, Section 46"is not just a mirror of equal protection notions but rather an absolute and unequivocal prohibition against applying statutory limitations to less than an entire class of like-situated litigants." Reynolds v. Porter , 1988 OK 88, ¶ 21, 760 P.2d 816, 824.

Our state constitution is a "unique document." Wall v. Marouk , 2013 OK 36, ¶ 4, 302 P.3d 775, 779. "Some of its provisions"-including Article 5, Section 46 -"are unlike those in the constitutions of any other state, and some are more detailed and restrictive than those of other states." Id. We also note-and not for the first time-that Oklahoma's "prohibition against special laws is not new." Id. ¶ 7, 302 P.3d at 779. "Even before statehood and the adoption of the Oklahoma Constitution, special laws were not permissible." Id. (citing Guthrie Daily Leader v. Cameron , 1895 OK 71, 41 P. 635 ); see also Chickasha Cotton Oil Co. v. Lamb & Tyner , 1911 OK 68, ¶ 0, 114 P. 333, 333, 114 P. 333 (early post-statehood decision interpreting Article 5, Section 46 as prohibiting "the enactment of special or local laws"). The people's distaste for the discrimination and favoritism of special laws was given lasting force through the 1907 Constitution and retains its vitality today.